HENRY HYSLOP *et al.*

*v.*

MARTIN FINCH.

*Filed at Ottawa May 14, 1881.*

1. APPEAL—*when it lies from Appellate Court.* An appeal lies from the final judgment of the Appellate Court to this court, in a common law proceeding by *certiorari,* without any certificate of questions of law, and without regard to the magnitude of the interests involved, there being no property rights directly involved.

2. CERTIORARI—*at common law—when it will lie.* There are two classes of cases in which a common law *certiorari* will lie: first, where it is shown that the inferior court or jurisdiction has exceeded its jurisdiction; and, second, where it is shown that the inferior court or jurisdiction has proceeded illegally, and no appeal or writ of error will lie.

3. SAME—*office of the writ.* The common law writ of *certiorari* simply brings before the court, for inspection, the record of the inferior tribunal or body, and its judgment affects the validity of the record alone,—that is, determines that it is valid or invalid.

4. SAME—*evidence considered as to allowance of writ.* It being within the discretion of the court to grant or refuse the writ, extrinsic evidence to the record may be received to show that no injustice has been done,—that if the proceedings shall be quashed the parties can not be placed *in statu quo,* or

that for any good reason the writ ought not to be granted. If such evidence is given by the respondent, the petitioner will have the right to rebut it. But when the record is before the court on the return of the writ, the court will look only at the record.

5. SAME—*laches, when a bar.* Mere lapse of time, short of the limitation for prosecuting a writ of error, will not bar the issuing of the common law *certiorari;* and in order that it may be barred by *laches,* it must appear that since the making of the record sought to be reviewed, and upon its assumed validity, something has been done so that great public detriment or inconvenience might result from declaring it invalid.

6. On the 20th of August, 1877, certain commissioners of highways ordered the laying out and establishing of a highway. In the vacation preceding the March term, 1879, of the circuit court of the county in which the proceedings were had, one of the owners of the lands across which the highway had been established applied to the judge of that court for the common law writ of *certiorari,* to bring in review the action of the commissioners. It did not appear that any act whatever had been done upon the assumed validity of the order of the commissioners, or that any injurious results would follow from a judgment declaring it invalid. It was *held,* no *laches* was shown which should bar the writ.

7. TAKING PRIVATE PROPERTY FOR PUBLIC USE—*prerequisites.* Whenever, in pursuance of law, the property of an individual is to be divested by proceedings against his will, there must be a strict compliance with all the provisions of the law which are made for his protection and benefit. Those provisions must be regarded as in the nature of conditions precedent, which must not only be complied with before the right of the property owner is disturbed, but the party claiming authority under the adverse proceeding must affirmatively show such compliance.

8. SAME—*compensation, not benefits, for property taken.* A party's land can not, under any guise or pretext, be taken for a highway until compensation, ascertained by a jury as prescribed by the statute, is paid to him, and the record must affirmatively show that the law has been observed. Where the verdict of the jury shows that benefits were allowed against the value of the land, it will, under the order establishing the road, be absolutely void. Such defect goes to the jurisdiction of the commissioners. The owner of land condemned for a highway for the use of the public is entitled to be paid in money for the full value of the land actually taken, and he can not be paid therefor in benefits to result from the laying out of the highway. As to damages, he may be thus compensated.

9. SAME—*construction of the statutes, on the subject of compensation for land taken for highway.* The act of May 26, 1877, concerning "roads and bridges in counties under township organization," as respects the matter of awarding compensation and assessing benefits, makes no discrimination between the

value of the land actually taken, and damages otherwise resulting to land owners in consequence of laying out and establishing highways. But the chapter of the Rev. Stat. 1874, on the subject of "Eminent Domain," does make such discrimination, and is to be construed *in pari materia* with the statute in relation to roads and bridges, supplementing such statute wherever it is deficient in respect to the same subject matter.

10. SAME—*excuse for failure to condemn.* To excuse a failure to condemn land for a highway, and the assessment of the owner's compensation, on the ground of there being no claim for the same, his release in writing should be filed in the town clerk's office, and recorded with the order laying out the road.

11. SAME—*effect of change in the law pending proceedings.* Where steps were taken to lay out a highway, by commissioners of highways, prior to July 1, 1877, when the act of May 26, 1877, took effect, but not completed until afterwards, it was *held,* that what had been done prior to July 1, 1877, pursuant to the provisions of the act of April 11, 1873, was valid, and what remained to be done, to be valid, must conform to the requirements of the act of May 26, 1877.

12. ERRORS—*not assigned in Appellate Court can not be in this court.* An alleged error of the circuit court not assigned for error in the Appellate Court, can not be urged in this court. It comes too late.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Grundy county; the Hon. JOSIAH McROBERTS, Judge, presiding.

Petition was filed by appellee, in the circuit court of Grundy county, for a common law *certiorari.* An order was made by one of the circuit judges, in vacation, that the writ issue.

At the March term, 1879, of the circuit court of Grundy county, by stipulation of parties, it was agreed that the facts stated in the petition should be taken and accepted as a return to the writ, and thereupon appellants moved to quash the writ, but this motion was overruled; and thereupon the court adjudged that the record and proceedings brought before it by the writ were illegal and void, and wholly without effect for establishing a public highway.

Proper exception was taken to the several rulings of the circuit court, and appellants took the case, by appeal, to the

Appellate Court for the Second District. That court, by its judgment, affirmed the judgment of the circuit court. The present appeal is from the last named judgment.

The matters presented by the record, material to the questions here discussed, are: On or about the 23d of May, 1877, a petition, duly signed, posted and verified, was presented to the commissioners of highways of the town of Vienna, in Grundy county, praying that a certain public highway, therein particularly described, be established and maintained—the line whereof crosses the lands of appellee and others; that on the 30th of June, 1877, the commissioners having met, etc., decided and publicly announced that they granted the prayer of the petition, and indorsed upon the petition a brief memorandum of their decision, signed by them as commissioners; that the commissioners were unable to agree with appellee in regard to his damages, and thereupon, on the 17th of July, 1877, they certified to W. H. Curtis, a justice of the peace of said county, that they were unable to agree upon the damages that the different owners would sustain by reason of the location of said highway,—among which owners appellee was one,— and asked for a jury to assess the damages of said owners; that thereupon said justice of the peace proceeded to give said commissioners the names of eighteen men from which to select a jury for the purpose of assessing the damages of said owners, including appellee; that thereupon the said justice of the peace, in the absence of appellee, issued a summons for six men to appear before him, at, etc., on the 24th of July, 1877, at 10 o'clock A. M., to assess the damages of said owners; that on said 24th of July, 1877, the said jury, composed only of six men, was impanelled, and proceeded to assess the damages of the land owners, including appellee, and, as to appellee, their verdict was as follows: "We, the undersigned jurors, after viewing the location of said contemplated road, and carefully considering the damages as well as the benefits to the owners of the land over which said road is designed to run, do hereby

return this our verdict, which is as follows, to-wit:  *  *  *
For Martin Finch we balanced the benefits against the
damages, and found them equal;" and that afterwards, and on
the 20th of August, 1877, the commissioners proceeded to
lay out and establish the highway, as prayed for in the
petition.   The road established is sixty feet in width.

The errors assigned are:

1st.   The Appellate Court erred in affirming the judgment
of said circuit court of Grundy county.

2d.   The said Appellate Court erred in rendering judg-
ment for costs against said appellants.

Messrs. JORDAN & STOUGH, for the appellants:

In assessing the damages, the jury were acting in the
capacity of a judge, and an error of judgment on the part
of the judge, either as to the facts or the law of the case,
can not be inquired into on a writ of *certiorari. Doolittle* v.
*Galena and Chicago Union Railroad Co.* 14 Ill. 381.

The jurisdiction of an inferior court being once estab-
lished, the superior court will then presume facts sufficient
to sustain its jurisdiction. *Morgan* v. *Green*, 17 Ill. 395;
*Commissioners* v. *Harper*, 38 id. 103.

After the jurisdiction of the inferior court has been once
established, the superior court on *certiorari* will consider no
error that does not affirmatively appear upon the record.
*Marq. and Pac. Rolling Mill Co.* v. *Morgan*, 41 Mich. 296.

The laying out and opening of a public highway is not an
exercise of judicial powers, but the presumption is that all
the antecedent proceedings have been regular. *Nealy* v.
*Brown et al.* 1 Gilm. 10; *Waddle* v. *Duncan*, 63 Ill. 226;
*Carr* v. *Fayette*, 37 Iowa, 608.

The common law writ of *certiorari* can issue to inferior
tribunals and jurisdictions only in cases where they exceed
their jurisdiction, and in cases where they proceed illegally,
and there is no appeal or other mode of directly reviewing
their proceedings.   *People* v. *Williamson*, 13 Ill. 660; *Doo-*

*little* v. *Galena and Chicago Union Railroad Co.* 14 id. 381; *Miller et al.* v. *Trustees of Schools,* 88 id. 26.

If the relator was dissatisfied with the damages assessed, he might have appealed to three supervisors of the county outside of the town, when another jury could have been called. Rev. Stat. 1874, pp. 928, 929, secs. 99 and 100; *Hankins* v. *Calloway et al.* 88 Ill. 155.

The petitioner having full notice of the time when and the place where the damages would be assessed, and failing to present any claim therefor at the time of such assessment, but wilfully absenting himself, is forever thereafter estopped from insisting upon any damages. *Ferris* v. *Ward,* 4 Gilm. 499; *County of Sangamon* v. *Brown et al.* 13 Ill. 207; *Taylor* v. *Marcy,* 25 id. 426.

The writ of *certiorari,* when used for the purpose of reviewing the acts and decisions of special jurisdictions created by statute, and which do not proceed according to the course of the common law, does not issue *ex debito justitiæ,* but only upon application to the court, and special cause shown. *Trustees, etc.* v. *School Directors,* 88 Ill. 100; *People* v. *Supervisors,* 15 Wend. 198; *In re Lantis et al.* 9 Mich. 324; *Holden* v. *County Comr's.* 7 Metc. 565; *Whateley* v. *County Comrs.* 1 id. 336.

That the writ should have been denied for *laches,* counsel cited *In re Lantis et al.* 9 Mich. 324; *Perkins et al.* v. *Hadley,* 4 Hayw. 143; *Keys* v. *Maria Co.* 42 Cal. 253; *Harbaugh* v. *Martin,* 30 Mich. 236; *People ex rel.* v. *Drain. Commissioners, etc.* 40 id. 745.

Messrs. Hill & Dibell, for the appellee:

As to the jurisdiction of the Supreme Court to entertain this appeal, counsel cited *Lewis* v. *Shear,* 93 Ill. 121; *Hancock* v. *Tower,* id. 150; *Morris* v. *Preston,* id. 215; *Preston* v. *Gahl,* 94 id. 586; *McGuirk* v. *Burry,* 93 id. 118; *Whitmer et al.* v. *Comrs. Highways,* 96 id. 289; *Baber* v. *Pittsburgh, Cincinnati and St. Louis Railroad Co.* 93 id. 343.

The full value of land taken or sought to be taken for public use must be paid in money, regardless of any and all benefits or advantages which may result from laying the road. *Comrs. of Highways* v. *Durham,* 43 Ill. 86; *Kine* v. *Defenbaugh,* 64 id. 291; *Carpenter* v. *Jennings,* 77 id. 250.

A proceeding to condemn land for a right of way, being an extraordinary and summary remedy, and not according to the course of the common law, the party exercising the power must strictly observe all the requirements of the statute under which he acts. *Chicago and Alton Railroad Co.* v. *Smith,* 78 Ill. 96.

An appeal presupposes, and indeed is a recognition of, jurisdiction. Where the commissioners or jury act without or exceed their jurisdiction, *certiorari* is the proper remedy. An appeal can not remedy the evil complained of. *Comrs. etc.* v. *Harper,* 38 Ill. 103; *Frizell* v. *Rogers,* 82 id. 112; *Bailey* v. *McCain,* 92 id. 277.

As to the question of *laches,* counsel cited *Trustees, etc.* v. *School Directors,* 88 Ill. 100; *People* v. *Supervisors of Alleghany,* 15 Wend. 198; *People* v. *Mayor,* 2 Hill, 12; *Elmendorf* v. *Mayor, etc.* 25 Wend. 692; *Thompson* v. *Multnoonah Co.* 2 Oregon, 34; *Holden* v. *County Comrs. etc.* 7 Metc. 565; *Rutland* v. *County Comrs. etc.* 20 Pick. 77.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Three questions are presented for our consideration upon this record:

*First*—Has this court jurisdiction,—no question of law having been certified by the Appellate Court?

*Second*—Is the writ barred by *laches* in suing it out?

*Third*—Was the order of the commissioners of highways, ordering the highway to be laid out and established, void?

1. The common law writ of *certiorari* simply brings before the court, for inspection, the record of the commissioners of highways; and its judgment affects the validity

of the record alone—*i. e.*—determines that it is valid or invalid. *Doolittle* v. *Galena and Chicago Union Railroad Co.* 14 Ill. 381; *People ex rel.* v. *Wilkinson,* 13 id. 660; *Chicago and Rock Island Railroad Co.* v. *Whipple,* 22 id. 105; *Chicago and Rock Island Railroad Co.* v. *Fell,* id. 333; *Comrs. of Highways* v. *Supervisors, etc.* 27 id. 140.

Necessarily, therefore, no property rights are directly involved, and the right of appeal, without any certificate, exists, under the authority of *Baber* v. *Pittsburgh, Cincinnati and St. Louis Railroad Co.* 93 Ill. 342.

In that case, at page 355, it was said: "Inasmuch as the 90th section, and the provisions of the 8th section, which relate to the specific classes therein provided for, have reference only to such legal proceedings as are instituted to recover either chattels or money, it follows that there is yet another class of cases which do not directly involve property rights, and therefore do not fall within either of the three classes above mentioned. This class of cases will include bills for divorce, actions of *mandamus,* and certain classes of cases of bills for injunctions, where they are not in effect brought to recover chattels or a money demand." To this list, manifestly, should be added cases of common law *certiorari.* It was also further said: "In all cases of this character, not directly involving property rights, an appeal or writ of error lies without regard to the magnitude of the interests involved."

The motion to dismiss the appeal is overruled.

2. In *Trustees, etc.* v. *School Directors,* 88 Ill. 100, we held, under the facts presented by that record, that a writ of *certiorari* ought not to have been granted, and having been granted, should be dismissed, because of the *laches* in suing it out. Three years of time only had there elapsed since the making of the record sought to be reviewed, but we said: "A proper plat of the district, as constituted after the changes effected by the action of the board, was made and filed with the county clerk, at the time; and thereafter

the school funds were apportioned in accordance with such changes, and the presumption is that taxes for school purposes were thus levied and collected," etc.

The record here fails to show that any act whatever has been done upon the assumed validity of the order of the commissioners in ordering the highway to be laid out and established, and there is nothing from which we may infer that injurious results will flow from a judgment declaring the order invalid.

Mere lapse of time, alone, short of the limitation for prosecuting a writ of error, will not bar the issuing of a common law *certiorari;* and in order that it may be barred by *laches*, it must appear that since the making of the record sought to be reviewed, and upon its assumed validity, something has been done so that great public detriment or inconvenience might result by declaring it invalid.

The correct practice, we think, is laid down in *Rutland* v. *Comrs. etc.* 20 Pick. 77. It is there said : " A petition for a writ of *certiorari* is well understood to be addressed to the discretion of the court. When the record is before the court upon the return of the writ, the court will look only at the record. For this reason, it would be futile to admit evidence to contradict the record on the petition for a *certiorari*, but it being within the discretion of the court to grant or refuse the writ, extrinsic evidence to the record may very properly be received, to show that no injustice has been done, and that a *certiorari* ought not to be issued. The petitioners in the case before us will, in the first place, exhibit the record, and point out in what particulars they deem it to be erroneous or defective; and then the respondent may prove, by extrinsic evidence, that no injustice has been done,—that if the proceedings shall be quashed the parties can not be placed *in statu quo,* or that for any good reason a *certiorari* ought not to be granted. If such evidence shall be offered by the respondent, the petitioners will of course have a right to rebut it by like evidence."

No *laches* is shown which, in our opinion, should bar the present writ.

3. When the petition for this highway was filed in the town clerk's office, (May 23, 1877,) and when the commissioners made their order granting its prayer, (June 30, 1877,) the "Act in regard to roads and bridges in counties under township organization," approved and in force April 11, 1873, was in force. Rev. Stat. 1874, p. 912. But another "Act in regard to roads and bridges in counties under township organization," was approved May 26, 1877, and went into force on the 1st of July of that year. Laws of 1877, p. 178. Sections 88 and 89, of this last named act, are as follows:

"Section 88. That an act entitled 'An act in regard to roads and bridges,' approved April 10, 1872, and in force August 15, 1872, so far as the same relates to counties under township organization, and also all other acts and parts of acts inconsistent herewith, be and the same are hereby repealed: *Provided,* that the repeal of said act shall not affect any suit or proceeding pending, or impair any right existing, at the time this act shall take effect.

"Section 89. That any act or part of act, inconsistent with this, be and the same is hereby repealed."

The act of April 10, 1872, had been repealed by the 57th section of the act of April 11, 1873,—Rev. Stat. 1874, p. 945,—and the question is raised in argument, whether we can hold the intent of the legislature, by the 88th section of the act of May 26, 1877, was to repeal the act of April 10, 1872, or the act of April 11, 1873.

There would hardly seem room for construction here. There is no ambiguity in the language. The act of April 11, 1873, contains an emergency clause, whereby it went into force immediately upon its approval, while the act of April 10, 1872, contained no such clause, but, by its own terms, went into force on the 15th day of August, 1872; and the 88th section expressly says, that it is the act of April 10, and

in force August 15, 1872, that.is thereby repealed, and the rights under which are thereby saved. No doubt those who framed the act supposed that the only act in relation to roads and bridges then in force was the act of April 10, 1872; but this mistake on their part would hardly authorize us to hold that this section does not apply to what, in positive and unmistakable terms, it says it does apply.

But we regard this as of but little consequence, since by section 2 and section 4, of chap. 131, Rev. Stat. 1874, p. 1012, it is enacted as follows:

"Section 2.  The provisions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of such prior provisions, and not as a new enactment."

"Section 4.  No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not,   *   *   as to any act done   *   *   *   or any right accrued or claim arising under the former law, or in any way whatever to affect any such offence or act so committed or done,   *   *   *   or any right accrued or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, as far as practicable, to the laws in force at the time of such proceeding.   *   *   *   This section shall extend to all repeals, either by express words or implication, whether the repeal is in the act making any new provision upon the same subject or in any other act."

The 89th section of the act of May 26, 1877, of course repeals the act of April 11, 1873, and by the effect of these provisions, what had been done prior to July 1, 1877, pursuant to the provisions of the act of April 11, 1873, was valid, and what then remained to be done, to be valid, must conform to the requirements of the act of May 26, 1877,—and this would but have been the effect of section 88, had it applied to the act of April 11, 1873.

The jury impanelled on the 24th of July, 1877, it affirmatively appears, was only composed of *six* persons.  The jury

required by the 39th section of the act of May 26, 1877, must be composed of *twelve* persons. Moreover, the constitution of 1870 provides: "Private property shall not be taken or damaged for public use without just compensation. Such compensation, when not made by the State, shall be ascertained by a jury, as shall be prescribed by law." And it has been held under this, the owner of land condemned for a highway for the use of the public is entitled to be paid in money for the full value of the land actually taken; and he can not be paid therefor in benefits to result from the laying out and establishing of the highway. As to damages, he may be thus compensated; but for the land actually taken he must be paid its value in money. *Carpenter* v. *Jennings,* 77 Ill. 250; *Hayes* v. *O. O. and F. R. V. Railroad Co.* 54 Ill. 373; *Peoria, Pekin and Jacksonville Railroad Co.* v. *Laurie,* 63 id. 265; *Todd* v. *The Kankakee I. R. Railroad Co.* 78 id. 530.

It is true, the act of May 26, 1877, makes no discrimination between the value of the land actually taken, and damages otherwise resulting to land owners in consequence of laying out and establishing highways, but provides only for assessing damages generally. But the 47th chapter of the Rev. Stat. 1874, which treats of "Eminent Domain," (p. 475,) does make such discrimination, and points out the mode for ascertaining the value of the land taken.

The 1st section of that chapter repeats the constitutional provision before quoted, and the 2d section provides: "That in *all* cases where the right to take private property for public use, without the owner's consent, or the right to construct or maintain *any public road,* * * * or which may damage property not actually taken, has been heretofore or *shall hereafter be conferred by general law* or special charters upon any corporate or *municipal authority,* public body, officer or agent, person, commissioners or corporation, and the compensation to be paid for or in respect of the property to be appropriated or damaged for the purposes above mentioned, can not be agreed upon by the parties interested,

* * * it shall be lawful," etc., and then follow directions as to the mode of impanelling a jury, bringing adverse parties into court, etc.

The 8th section prescribes the oath to be taken by the jury, and the 9th section is as follows: "Said jury shall, at the request of either party, go upon the land sought to be taken or damaged, in person, and examine the same, and after hearing the proof offered make their report in writing, * * so as clearly to set forth and show the compensation ascertained to each person thereto entitled, and the said verdict shall thereupon be recorded: *Provided,* that no benefits or advantages which may accrue to lands or property affected shall be set off against or deducted from such compensation, in any case." And the 10th section provides for the entering of judgment upon this verdict, and declares that such judgment, with the evidence of payment of the amount found by the verdict, "shall constitute complete justification of the taking of such property."

This chapter has remained in force since its enactment, and upon a well settled rule of construction is to be construed *in pari materia* with the statute in relation to roads and bridges, supplementing such statute wherever it is deficient in respect to the same subject matter.

It is therefore clear, beyond controversy, that the verdict of the jury before us fails to conform to the requirements of the law. If it be said the jury took into consideration the value of the land, then the verdict shows that, directly in the teeth of the law, the jury undertook to set off benefits against it. If they did not take the value of the land into consideration, then, under the constitution and the law, it can not be entered upon or taken.

The rule is: "Whenever, in pursuance of law, the property of an individual is to be divested by proceedings against his will, there must be a strict compliance with all the provisions of the law which are made for his protection and benefit. Those provisions must be regarded as in the nature of con-.

ditions precedent, which must not only be complied with before the right of the property owner is disturbed, but the party claiming authority under the adverse proceeding must affirmatively show such compliance." Cooley's Const. Lim. 528. And so we have expressly held in cases analogous to the present: *Marsh* v. *Chesnut,* 14 Ill. 225 ; *Smith* v. *Chicago, Alton and St. Louis Railroad Co.* 67 id. 191 ; *Mitchell* v. *Illinois and St. Louis Railroad Co.* 68 id. 286 ; *Chicago and Alton Railroad Co.* v. *Smith,* 78 id. 96.

There are two classes of cases in which, according to the previous decisions of this court, a common law *certiorari* will lie: 1st. Whenever it is shown that the inferior court or jurisdiction has exceeded its jurisdiction. 2d. Whenever it is shown that the inferior court or jurisdiction has proceeded illegally, and no appeal or writ of error will lie. *The People ex rel.* v. *Wilkinson, supra ; Doolittle* v. *Galena and Chicago Union Railroad Co. supra; Chicago and Rock Island Railroad Co.* v. *Whipple, supra; Chicago and Rock Island Railroad Co.* v. *Fell, supra; Comrs. of Highways* v. *Supervisors, etc., supra.*

The defect here goes to the *jurisdiction* of the commissioners of highways to make the order declaring the highway laid out and established. It is not a mere irregularity, but a defect, which, under the authority of the cases before referred to, goes to the root of the proceedings, and renders the order of the commissioners absolutely void. Appellee's land could not, under any guise or pretext, be taken for a highway until compensation, ascertained by a jury as provided by the statute, was paid to him, and the record must affirmatively show that the law has been observed. In addition to the cases before referred to, see *The People ex rel.* v. *McRoberts,* 62 Ill. 38 ; *Kine* v. *Defenbaugh et al.* 64 id. 291.

There can be no presumption that appellee did not claim compensation, and thereby waived all right thereto ; for to excuse a failure to condemn on that ground, his release, in writing, should have been filed in the town clerk's office, and

recorded with the copy of the order laying out and establishing the road.   Sec. 36, act of May 26, 1877, (Laws of 1877, p. 187.)

An additional objection is urged against the judgment of the Appellate Court, to the effect that it was error in the circuit court to render judgment against appellants for costs.   This was not assigned for error in the Appellate Court, and, from the arguments there filed, does not appear to have been brought to the attention of that court in argument.   It can not be urged, for the first time, here.   It comes too late.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*