THE CENTRAL UNION BUILDING COMPANY

*v.*

KATHERINE KOLANDER, Admx.

*Opinion filed October 24, 1904.*

1. APPEALS AND ERRORS—*errors not urged in Appellate Court are waived.* Assignments of error which would cover supposed erroneous rulings of the trial court but which are not argued or called to the attention of the Appellate Court are waived, and cannot be urged in the Supreme Court.

2. SAME—*when alleged error in modifying instruction is waived.* Alleged error in modifying an instruction is waived where such modification is not specified as a ground for new trial among the written reasons presented in support of the motion.

3. SAME—*objection of variance is waived if not made below.* In an action for the death of plaintiff's intestate from a defective elevator in a building, if no objection is made in the trial court that the case of negligence made by the proof does not correspond with the allegations, the variance cannot be urged in a court of review to defeat plaintiff's recovery.

4. SAME—*when Supreme Court is limited to a single question.* If the only ground for reversal of a judgment at law urged in the Appellate Court is the insufficiency of the evidence, the only question for the Supreme Court on further appeal is whether there is any evidence in the record tending to show the plaintiff's right to recover.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

This is an action on the case, brought by Katherine Kolander, administratrix of the estate of Joseph Kolander, deceased, to recover damages for injuries, resulting in the death of the deceased, while he was in the service of the appellant company. The deceased, Kolander, left him surviving the appellee, Katherine Kolander, his widow, and four daughters and three sons, his children, the eldest of whom was seventeen years of age, and the youngest one year old. The plea of the general issue was filed; and the trial in the court below resulted in verdict and judgment in favor of the appellee. This judgment has been affirmed by the Appellate Court, and the present appeal is prosecuted from such judgment of affirmance.

The declaration alleges that the appellant company was, on May 3, 1901, operating a freight elevator in a six-story building in Chicago for the purpose of carrying freight to and from the different floors of the building; that deceased, Joseph Kolander, was employed by the appellant as a conductor of said elevator; that it was the duty of appellant to provide deceased with a safe place to work, and one that was reasonably free from danger; that the place provided was not safe and was not reasonably free from danger, but was unsafe and dangerous in this, that said elevator was provided with a certain automatic stop in general use designed for the purpose of stopping the elevator at the extent or end of its travel, but, on said day and for a long time before, said automatic stop was detached, old, worn and imperfect; that this condition caused it to fail to act properly, but instead to start said elevator suddenly in a certain direction without warning, and rendered the elevator very unsafe and dangerous for any person who might be thereon or thereabouts; that defendant had notice of this, but negligently permitted such condition to exist and instructed the deceased to work in said elevator as its conductor, by means whereof, while he was on said day about six o'clock in the afternoon working as a conductor in said elevator, using all care for his own

safety, without notice and knowledge of said danger, was lowering the elevator to the bottom, it suddenly and without warning, by reason of the action of the defective automatic stop, swiftly ascended carrying said deceased; and his body was caught between the wall of the shaft and the elevator, crushing him and causing his death.

The appellant, defendant below, offered no evidence, but made a motion in writing at the close of the plaintiff's evidence to exclude all such evidence from the jury, and to instruct the jury to find the defendant not guilty. This motion was overruled by the court, and exception was taken to the order overruling the same, and the defendant below elected to stand by its motion.

There was no eye-witness to the accident, which caused the death of Kolander. He had come down alone on the elevator, making the last trip just about the time of quitting work for the day. He was found in a dying condition at the bottom of the elevator shaft at about six o'clock on the evening of May 3, 1901. A large iron shutter, some six and a half feet high, which it was the custom, when the conductor of the elevator left at night, to pull down from above, so as to enclose the opening to the shaft, was found pulled half way down to the floor. In this condition it would be of convenient height to be closed from the outside. Commencing on the inside of this iron shutter, and leading upwards, there were marks of the dragging of a human body. These marks could be traced along the walls of the elevator shaft up to a window, sunken into the wall at the third story. Here, marks of the deceased's body were found, and on this sunken window recess pieces of his lead-pencil and buttons from his jumper were found; and the marks, ending here, tended to show that he was caught between the side of the elevator and the iron shutter, and was dragged upward and pressed close to the wall of the shaft, until he came to the sunken window where he was lodged, the elevator passing on in its ascent. From this window recess he fell to the bottom of the ele-

vator shaft, and died soon after by reason of the injuries thus received.

UTT BROS., for appellant.

SAMUEL COHEN, and WOOD & ELMER, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

At the June term, 1904, of this court, a motion was made by the appellee for leave to file certified copies of the appellant's brief and argument made in the Branch Appellate Court for the First District when this case was heard there, for the purpose of showing to this court the question raised by appellant and decided by the Appellate Court. This motion was allowed, and appellant's Appellate Court brief has been filed. It appears therefrom that the only error, upon which appellant relied for a reversal in the Appellate Court, was that the evidence did not sustain the verdict, and that the trial court should have sustained the motion to exclude it from the jury at the close of appellee's evidence. In their brief in the Appellate Court, counsel for appellant say: "This case is peculiar in that it stands clearly upon a question of fact. No errors of law are relied upon for reversal. The only question to be decided is, did the evidence of the appellee warrant the court in allowing the case to go to the jury? It is a case that should be either affirmed or reversed without remanding."

The present appeal only has the effect of bringing the judgment of the Appellate Court before this court for review, and this court will not declare that the Appellate Court erred upon a point not presented to it for decision. Even where errors are assigned in the Appellate Court, which would cover supposed erroneous rulings of the trial court, but such errors are not argued nor brought to the attention of the Appellate Court, they will be held to have been waived

and abandoned and cannot be raised in this court for the first time. (*Chicago and Alton Railroad Co.* v. *American Straw-board Co.* 190 Ill. 268; *Abend* v. *Endowment Fund Commission,* 174 id. 96). Therefore, the only question now before this court is, whether or not the trial court erred in refusing to instruct the jury to find the appellant not guilty. If there is evidence in the record tending to show the plaintiff's right to recover, the trial court did not err in refusing such instruction. (*Frazer* v. *Howe,* 106 Ill. 563; *Wenona Coal Co.* v. *Holmquist,* 152 id. 581; *Landgraf* v. *Kuh,* 188 id. 484).

After a careful examination of the evidence, we are not able to say that there was no evidence, tending to show that the appellant company was guilty of such negligence as caused the injuries, which resulted in the death of appellee's intestate.

The elevator was operated by steam power, and the engine was directly back of, and separated from, the shaft by a partition. The operator controlled the movements of the elevator by means of a cable, which ran through the south-west corner of the platform. The elevator was an open one, there being no cage on the outside, and the floor or platform was eight by twelve feet in dimensions. Attached to the elevator and the engine was an automatic stop, the gear of which was in the engine room, and consisted of bevel gears held in place on shafts, to which they were attached by keys. The purpose of the automatic stop device was to bring the elevator to rest at the extremes of travel, both at the bottom and top floors of the building. When it was in operation and was not defective, it would bring the elevator to rest at the limit of travel both at the top floor and at the bottom floor. This automatic stop device, being on the engine, was not under the control, nor in sight of, the operator of the elevator.

The evidence is undisputed that, at the time of the accident, this "automatic stop was entirely disconnected, and of no use whatsoever, on account of the loss of the key the

pinion was (is) caught on, and that key was lost." This key served to drive the train of gears, to which the automatic stop was attached. The automatic stop, when the key was out, would not turn, and was of no use. Without attempting to describe the mechanical features of the device in question, it is sufficient to say that, when the key was in its proper place, and the automatic stop was not defective, the elevator would descend to the bottom softly and safely, but that, when the key was out, and the automatic stop was in such a defective condition as the proof here shows in regard to this automatic stop, the elevator, instead of remaining at the bottom, would rebound and ascend. The proof shows that it was the duty of the engineer to inspect the engine each day, and see whether or not the stop in question was in a safe and proper condition. The proof tends to show that it was the duty of the engineer to make such examination, as would show the presence or absence of this key, at least once each day. The proof also tends to show that the elevator was in a defective condition some time before the accident occurred, as it was noticed that, when it descended, instead of remaining at the bottom, it would give a jerk and ascend. One of the expert witnesses says: "If the key is out, the elevator will not stop; it will reverse it." One of the city elevator inspectors, who examined the elevator on the day after the accident, says: 'The automatic stop, when the key is out, is of no use whatsoever. It will not turn. * * * From my examination, that reversing, automatic reversal, was due to the automatic stop-block not being in good condition." According to the expert testimony, "when the elevator is coming down, if it is coming down lightly, when it gets near the bottom, the automatic stop would slow it down and let it down safely, throw it on the center; let it down safely to a quiet stop without any rebound or anything of that kind; it would come down and stop; the function of the automatic stop is, to let that elevator down softly to a soft stop." Another expert witness states that he made an inspection of the elevator

on the day after the accident, and was not able to find the key in its place, and he says: "As the arm of the car struck the stop at the bottom, the car reversed and started up again. It went up by its own action. * * * If the key was in position and the automatic in perfect working condition, it would have stopped the car in the event of anything happening." The testimony of the witnesses tends to show that the key had been absent from its proper place for some time; and this was indicated, among other things, by the accumulation of dust at the spot, where the key must inevitably have fallen when it was removed from its place, and by the looseness of the cog on the pinion where it was formerly held by the key. The evidence tends to show that this key was in sight of the engineer, whose duty it was to keep his engine in repair and inspect it at least once each day.

It was charged by the appellant that the case, made by the declaration, was not the case sought to be established by the proof; in other words, that there was a variance between the allegations of the declaration and the proof introduced. The basis of this contention arises from the fact that the automatic stop was shown by the proof to have been merely a limit stop, and was intended to stop the elevator at the top floor and at the bottom floor, and not to start it upward. The theory of the accident was that, by reason of the ascent of the elevator, the deceased was caught between the floor and the door of the elevator, while he was seeking to go out from the elevator under the door, which worked up and down instead of laterally. While it is true that, when the automatic stop was in its proper condition, it stopped the elevator, yet the proof shows that, in view of its defective condition, the elevator, instead of remaining at the bottom when it reached the bottom, would rebound and ascend towards the top. The condition of things, presented by the proof, did not relate so much to the functions of the automatic stop when it was in good repair and effective operation, as to its effect on the elevator when wholly detached and worthless. The declaration

charged that the detached, old, worn, and imperfect condition of the automatic stop "caused it to fail to act properly, but instead to start said elevator suddenly, in a certain direction, without warning, and rendered said elevator very unsafe and dangerous." There was evidence tending directly to prove these allegations. The evidence tended to show that the automatic stop did not act properly, because, while it was intended to stop the elevator and keep it at the bottom, it failed to do this, and, in failing to do this, it caused a reversal of the power of the engine and started the elevator on its return upward. As it did not perform its proper function of keeping the elevator stopped and stationary at the bottom, but on the contrary reversed the engine, the defective condition of the automatic stop was the direct and proximate cause of the upward travel of the elevator. The allegations of the declaration so charged.

The testimony of one of the other operators of the elevators in this building that this particular elevator had on some other occasions, when brought to the bottom, started upward, and the testimony of the inspectors, who found that it would reverse at the bottom if allowed to come down, together with the fact that on closing the elevator for the night the iron shutter had to be pulled down from the inside within easy reach when the operator would pass it between the floor and the partly closed shutter, and the further fact that the accident happened just at the hour for closing, all tended to show that the defective automatic stop caused the upward movement of the elevator after it had been brought to the bottom, and while the operator was closing down the door for the night. It was a question of fact to be determined by the jury, whether the defective condition of this automatic stop was, under the circumstances already narrated, the proximate cause of the accident or not. (*Dallemand* v. *Saalfeldt,* 175 Ill. 310).

In addition to what has been said, there was at most but a variance between the allegations of the declaration and the

proof, and, as no question of the kind was raised upon the trial, or urged in the motion for new trial, or assigned as error in the Appellate Court, the question is waived so far as this court is concerned. When the appellee proved a cause of action arising out of the negligence of the appellant in maintaining an unsafe elevator, that was sufficient, and, if it was not proved as alleged, this objection cannot avail the appellant when first presented on appeal. (*Chicago, Burlington and Quincy Railroad Co.* v. *Dickson,* 143 Ill. 368; *Alford* v. *Dannenberg,* 177 id. 332).

There is no evidence, so far as we have been able to discover, to indicate that the deceased was guilty of contributory negligence. The proof tends to show that he had no notice of the defective condition of the automatic stop, and the evidence also tends to show that he had been engaged in operating this elevator for a period of ten years, and was a man of only forty years of age, and of good health, and of careful habits, and that he exercised care in the operation of this elevator. In *Dallemand* v. *Saalfeldt,* 175 Ill. 310, which was an action for damages by an administrator for the death of his intestate from falling down an elevator shaft, and where the evidence showed that the deceased was intelligent, sober and careful, we said (p. 313) : "The evidence shows that Saalfeldt was an intelligent, sober and careful youth, and from this evidence and the circumstances before them, and as there was no eye-witness to the accident, and no countervailing evidence, the jury were authorized to find that he was, at the time of the injury, using due care for his own safety."

Appellant complains that the trial court erred in modifying the second instruction asked by the appellant, and in giving the same as so modified. Even if the appellant was authorized to bring this matter to our attention, in view of the single point already mentioned upon which the case was heard in the Appellate Court, it is sufficient to say that the appellant failed to specify the modification of said instruction

as a ground for new trial among the written reasons, presented to the trial court in favor of a new trial. A party can not be permitted to assign for error the modification of one of his instructions when he fails to specify this as one of his grounds for a new trial. (*Consolidated Coal Co. of St. Louis v. Schaefer,* 135 Ill. 210). It also appears that, in its assignment of error in the Appellate Court, the appellant failed to assign as error such modification of its second instruction. An alleged error of the circuit court, not assigned for error in the Appellate Court, cannot be urged in this court. It comes too late. (*Hyslop* v. *Finch,* 99 Ill. 171; *Redlich* v. *Bauerlee,* 98 id. 134).

Appellant complains that the court permitted one of the elevator operators in this building to testify that about six or seven weeks before the accident he noticed, while operating the elevator on which the deceased met his death, that it started to ascend when lowered to the bottom, instead of remaining there as it should have done. While in the motion for new trial in the trial court, and in the assignments of error in the Appellate Court, it was specified that improper evidence was introduced by appellee over the objection of appellant, such assignments were not called to the attention of the Appellate Court in appellant's brief and argument, nor urged upon the attention of the Appellate Court in any manner; and such assignments are therefore waived. Although general errors are assigned in the Appellate Court, which would cover erroneous rulings in admitting and refusing to admit testimony, yet when the attention of that court is not called to any rulings in that behalf claimed to be erroneous, there is a waiver and abandonment on the part of appellant of such assignment of error. "Supposed errors waived or abandoned in the Appellate Court cannot be revivified in this court and raised here for the first time." (*Strodtmann* v. *County of Menard,* 158 Ill. 155).

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*