THE CHICAGO CITY RAILWAY COMPANY

*v.*

WILLIAM F. SCHMIDT.

*Opinion filed October 24, 1905.*

1. APPEALS AND ERRORS—*Supreme Court will consider only errors urged in Appellate Court.* Where the appellant's brief and argument in the Appellate Court is filed, by leave, in the Supreme Court, only such points as appear therefrom to have been urged in the Appellate Court may be considered; and points made in the petition for rehearing in the Appellate Court which the Supreme Court has refused leave to file cannot be considered.

2. NEGLIGENCE—*what tends to show negligence in managing a street car.* Running a car in charge of an "extra" motorman so close to a preceding car and at such speed that it could not be stopped on the slippery rails before it collided with the preceding car, which had stopped at a street crossing, the motorman having failed to sound his gong although he hallooed two or three times, tends to show negligence in managing the car.

3. SAME—*what is not negligence per se by passenger.* Standing on the rear bumper of a crowded street car to make room for passengers to get off and on at the crossing where the car had stopped, without notice that another car was approaching from the rear, is not negligence *per se,* it being a question for the jury whether the passenger was negligent in so doing.

4. INSTRUCTIONS—*when instructions are properly refused as ignoring material question.* Instructions directing a verdict for the defendant street car company in case the collision was caused by unavoidable slipping of the rear car on wet rails or by the car becoming uncontrollable though the usual means were taken to stop it, are properly refused, as ignoring the question whether the motorman in charge of the car began his efforts to stop the car in proper time.

5. SAME—*repetitions of instructions need not be given.* The refusal of instructions will not work reversal if the matters embraced therein are fully covered by other instructions given at the request of the same party.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

WILLIAM J. HYNES, WATSON J. FERRY, JAMES W. DUNCAN, and C. LEROY BROWN, (MASON B. STARRING, and W. E. WILLIAMS, of counsel,) for appellant.

RICHOLSON & LEVY, (C. STUART BEATTIE, of counsel,) for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is an appeal from a judgment of the Appellate Court for the First District affirming a judgment of the superior court of Cook county in favor of the appellee, and against the appellant, for $8000 awarded as damages to him for an alleged personal injury.

By leave of the court the brief filed by the appellant company in the Appellate Court has been filed in this court, from which it appears that only two grounds of reversal were urged in that court, viz.: "(1) That the verdict is not justified by the evidence; (2) for errors in the giving to the jury of improper and the refusal to give proper instructions." This appeal brings before us only such errors as were urged in the Appellate Court. *Central Union Building Co.* v. *Kolander*, 212 Ill. 27, and authorities there cited.

The first of the above stated grounds of reversal is evidently intended to raise the question whether there was any evidence introduced before the jury fairly tending to support plaintiff's cause of action, which question was raised in the trial court by the refusal to give a peremptory instruction to find for the defendant. This instruction was asked, and its refusal is urged as error on two grounds: First, that the evidence wholly failed to show that the plaintiff was in the exercise of reasonable care for his own safety at the time of the accident; and second, that it fails to establish the fact of the defendant's negligence, as charged in the declaration.

The several counts of the declaration charged that the plaintiff was a passenger on a car of the defendant, which

was followed by another car running in the same direction; that when the car upon which plaintiff was riding stopped at the intersection of Eighteenth and South Clark streets for the purpose of discharging passengers, the plaintiff, to make room so that they could alight, had to leave the rear platform, and he stepped around to the rear end of the car, and it was then and there the duty of the defendant to use due care about the management of its said second car and not to run said car against and into said first car and plaintiff, yet the defendant did not regard its duty or use due care in that behalf, but, on the contrary, while the plaintiff was in the exercise of due care and caution, the defendant negligently and wrongfully with great force and violence ran the said second car against and into said first car, and the plaintiff, by means thereof, was injured.

The evidence shows that about the hour of six o'clock on the evening of the 16th of December, 1900, the plaintiff was a passenger on the street car which the appellant company was running southward on South Clark street, in the city of Chicago. He boarded the car at VanBuren street, and the seats being occupied and the aisles crowded with passengers, he, with others, stood upon the rear platform, which was also crowded. The evidence on behalf of plaintiff is to the effect that he stood upon the platform until the car reached the crossing of Twelfth street, and then stood with his right foot on the steps of the car and his left on the corner of the bumper, his body leaning against the post of the vestibule. When the car reached the south side of Eighteenth street it stopped to permit passengers to get off, and it became necessary for those on the platform to vacate the same in order to make room for those wishing to alight. A witness named Hamill, who was a passenger on the car and also rode on the rear platform, testified: "The car stopped at Eighteenth street to let some passengers off, and as the platform was very crowded some of us had to make way to leave these passengers off, and then the car that was follow-

ing us run into us." The plaintiff testified that he stood on the rear platform from the time he got on the car because there was no room inside, and that he paid his fare to the conductor while so riding. He says: "I was standing on the platform from the first, and I remained on the platform up to Twelfth street. I then assumed the position with one foot on the step and one on the dead-wood or bumper, hanging on to the rear handle. There was a vestibule on the car. The dash-board continued up to the roof. * * * The car stopped at Eighteenth street to let off passengers, and I noticed passengers coming up. The platform was pretty well filled. I then got around back of the car. The people wanted to get out and I stepped around to make room. The car was standing still. I was just in the center of the car and was holding on to the lower window case. I was facing directly to the car, south, watching passengers get off. When I moved around there no car was in sight." On cross-examination he further testified, speaking of his position at the time of the injury: "In my judgment I was in this position about one-half a minute. I expected, just as soon as those parties got off, to leave the center of the car and go back around to the rear of the platform again. That was my intention. For the purpose of allowing people to step off the hind step of the car I passed around and located myself in this position, looking in through the window in the center of the vestibule in the end." While standing on the bumper, as above described, another car which the company was propelling southward along the same track, ran across the intersection of Eighteenth street and struck the one on which plaintiff was standing. The head-light of the rear car struck the right foot of the plaintiff and pushed it against a hook on the outside of the vestibule, crushing the bones and permanently injuring and disabling the foot, rendering it substantially useless.

The plaintiff was not riding on the bumper, as seems to be contended by appellant,—at least there is evidence fairly tending to prove that he got out on the rear of the car after

it had stopped at Eighteenth street, and there is no dispute that the car was not moving at the time of the collision, but was standing still. If he had voluntarily taken the unusual position in which he was injured, for the purpose of riding as a passenger, he might doubtless have been held guilty of contributory negligence *per se*. But that is not the case made by the evidence. There is no proof that he had reason to expect a car from the rear, and whether, in getting out of the way of the passengers desiring to get off the car, he was guilty of negligence, was a question of fact for the jury under all the facts and circumstances of the case. There was evidence fairly tending to show that the plaintiff was in the exercise of due care. The motorman on the rear car did not have a regular run, but was called an "extra," being called on only when some one regularly employed was not on duty. He had been so engaged for from four to six weeks. He testified that he saw the front car when he was at Sixteenth street, two blocks north of the place of the collision, and that plaintiff was then on the rear bumper; also that he knew that the forward car would stop at street crossings to receive and discharge passengers. He made no effort to slacken the speed of his car until he had reached a point ten or twenty feet north of Eighteenth street, when he says he saw the front car on the south side of Eighteenth street and saw the plaintiff standing on the bumper. He then made every effort to stop the car, but the wheels slipped on the rails, which were wet, and he was unable to control it until it came in contact with the car in front. He did not claim that he sounded the gong or gave any alarm, except that he "hollered" two or three times. Conceding that he did all he could to avoid the accident after he reached the point ten or twenty feet north of Eighteenth street, the question still remains whether he was not guilty of negligence in postponing his efforts to control the car until he reached that point,—that is, whether he made timely efforts to control the car. He must be held to have known the condition of the rails and the danger of the

wheels slipping. The jury also had a right, in determining the question of his negligence, to take into consideration the fact that he failed to give the usual alarm or signal. If he had rung the gong promptly upon discovering that he could not stop the car, the one in front might have moved forward or the plaintiff might have saved himself by getting off the bumper. Hallooing was not the usual or proper way of giving the alarm. Plaintiff may or may not have heard it, or if he did, failed to understand what was said. We are of the opinion that the evidence, though conflicting, fairly tended to show that the rear car was negligently managed and that such negligence caused the injury.

The trial court did not err in refusing to take the case from the jury.

Instruction No. 1 given on behalf of the plaintiff advised the jury that the defendant was bound, under the law, to exercise the highest degree of care and caution consistent with the practical operation of its cars, to save the plaintiff from injury while he was, if he was, a passenger on said car. It is said this instruction was erroneous because the defendant was not charged by the declaration with any violation of duty to protect or guard plaintiff against injury. We do not so read the declaration. It charges that the plaintiff was a passenger upon the defendant's car and that he was injured through the negligence of the servants of the company. It is also said that the instruction ignored the plaintiff's conduct in placing himself in the dangerous position, which fact necessarily affected the question of the defendant's duty in the premises. The plaintiff was not required to state the law of his case in a single instruction. No. 1 did not direct the jury that if they found the facts therein stated to be true they should find for the plaintiff, but simply stated the well established rule of law as to the duty of a common carrier of passengers.

The defendant, among the many instructions asked by it, offered the sixth, as follows:

"If the jury believe, from the evidence, that the coming together of the two cars was caused by an unavoidable slipping of the hind or following car upon a wet or slippery rail, without any negligence on the part of the employees thereof, then the jury should return a verdict of not guilty."

Also the ninth, as follows:

"If the jury believe, from the evidence, that the coming together of the two cars in question was caused by the following car becoming uncontrollable, then the jury must determine, from the evidence, whether or not the becoming uncontrollable of said car was due to negligence on the part of the employees in charge of it. If, after considering all the evidence, the jury believe that the employees in charge of said car undertook to stop it in the usual manner and with the usual means, and that there was no failure on their part to use the highest degree of practicable care in the operation of said car, then the jury must find the defendant not guilty. The motorman of said car was not required to do anything inconsistent with the practical or reasonable running of his car."

Both of these instructions are subject to the criticism that they ignored entirely one theory of plaintiff's case,—that is, that the motorman did not commence his efforts to control the car in proper time. The sixth is liable to the construction that the unavoidable slipping, if without negligence on the part of the employees, would excuse the defendant, whereas reasonable diligence by the motorman required him to act before the slipping of the wheels upon the rails. The ninth excuses the defendant if the motorman undertook to stop the car in the usual manner and with the usual means, whereas it was his duty to use unusual means because of the unusual condition of the rails at the time. But both these instructions were properly refused for the further reason that they were entirely covered by others given on behalf of the defendant. The sixteenth told the jury that the plaintiff could not recover unless they believed that the plaintiff had

proved, by a preponderance of the evidence, first, that the plaintiff was in the exercise of ordinary care for his own safety at and just prior to the time of the accident; second, that the defendant company was guilty of negligence in the manner charged in the declaration or in some count thereof; and third, that such negligence, if any, was the proximate, direct cause of the plaintiff's injury. By the twentieth, that if they believe, from the evidence, that the injury was the result of mere accident which occurred without negligence on the part of the defendant, as charged in the declaration or in some count thereof, then they should return a verdict of not guilty. By the twenty-eighth, that "the mere fact that Schmidt was injured is not sufficient, of itself, to make the defendant liable, if the jury believe, from the evidence, that at the time of the injury the employees of the defendant were exercising the highest degree of practicable care in the operation and management of the following car in question." Several other instructions in positive and unequivocal language told the jury that the plaintiff could not recover if his injury was the result of a mere accident and not occasioned by the negligence of the employees of the defendant. Therefore to have given the sixth and ninth instructions would have been but to repeat what the jury were told by those given. No one can read the eighteen lengthy instructions given by the court at the instance of the defendant, and which state the law of the case in its various phases,—many of them most favorably to the defendant,—and entertain the belief that the verdict of the jury was the result of misdirection by the court in its instructions.

Counsel for defendant have re-argued upon this rehearing that the point of the submission by the trial court of special interrogatories without notice to it was argued in the Appellate Court. It is not, as we understand, claimed that the question was urged in the Appellate Court except upon a petition for rehearing. It should be remembered that at the last February term the plaintiff asked leave to file de-

fendant's argument in the Appellate Court for the purpose of showing that the point in question was not presented in that argument. The defendant, in its counter-suggestions, admitted the fact alleged by the plaintiff, but made a cross-motion for leave to file the petition for rehearing, thereby impliedly admitting that the question was then raised for the first time. We allowed the motion of plaintiff and denied the cross-motion, and therefore the petition for rehearing in the Appellate Court was not and is not before us.

We have, in view of the large judgment in this case, rendering it important to the appellant, deemed it proper to consider carefully each substantial ground of reversal urged, and are convinced that no reversible errors of law were committed by the trial court in its disposition of the case. The judgment of the Appellate Court must therefore be affirmed.

*Judgment affirmed.*