400          Appellate Courts, of Illinois.

Feeney v. Chicago City Railway Co. et al., 220 Ill. App. 400.

## Margaret Feeney, Appellee, v. Chicago City Railway Company and Chicago Railways Company, operating under name of Chicago Surface Lines, Appellants.

### Gen. No. 25,631.

1. Appeal and error, § 1065*—*what assignments of error are sufficient.* Assignments of error that "the verdict is not justified by the evidence"; that "the verdict is against the law and the evidence"; that the trial court erred in overruling appellants' motion at the close of all the evidence to instruct the jury to find the appellants "not guilty"; that "the verdict is excessive," *held* to be sufficiently specific to raise the questions argued that appellants were not negligent, that plaintiff was guilty of contributory negligence and that the damages were excessive.

2. Carriers, § 359*—*what is duty as to place of alighting.* The general rule applicable to carriers of passengers, that all parts of their stations, platforms and approaches thereto must be kept in a safe condition, has only a limited application to street railway companies and cannot be extended so as to include the public street in which passengers are received and discharged, and over which the street railway has no control.

3. Carriers, § 434*—*when passenger is guilty of contributory negligence.* A passenger who, in alighting from a street car, has as good an opportunity as the company's servants to observe the conditions of a street and to know that such conditions are dangerous, will, in case he attempts to alight under these conditions, be held guilty of contributory negligence if injured.

4. Carriers, § 476*—*when street railroad is not negligent.* Evidence *held* to show no negligence of a street car company allowing a passenger to alight at the end of its line where the streets were in a torn-up condition.

Appeal from the Circuit Court of Cook county; the Hon. Samuel C. Stough, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1919. Reversed with finding of fact. Opinion filed December 31, 1920. Rehearing denied January 12, 1921.

John E. Kehoe and Watson J. Ferry, for appellants; W. W. Gurley and J. R. Guilliams, of counsel.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

ADAMS, FOLLANSBEE, HAWLEY & SHOREY, for appellee; CLYDE E. SHOREY, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

Plaintiff sued the defendant street railway companies and in her declaration alleged that she was a passenger for hire on one of their cars; that it became the duty of defendants to furnish her a safe place in which to alight, which they did not do, but negligently and carelessly caused the car upon which plaintiff was riding to stop at a point where the street was torn up and in a state of disrepair, and negligently caused plaintiff and other passengers to alight from it in the said unsafe and dangerous place, which while plaintiff was doing, in the exercise of due care, she fell and was injured.

In a second count the plaintiff alleged negligence of the defendants in that they failed to warn her of the dangerous situation before she alighted. The defendants filed the general issue and the cause was tried by a jury. Motions were made by defendants at the close of plaintiff's evidence, and at the conclusion of all the evidence for a directed verdict, which motions were denied, and the cause was submitted to the jury, which brought in a verdict for plaintiff in the sum of $1,300. Motions for a new trial and arrest of judgment having been overruled, judgment was entered on the verdict.

Appellants argued that the defendants, on the undisputed evidence, were not negligent, that plaintiff was guilty of contributory negligence, and that the damages are excessive.

The appellee argues that appellants' assignments of error are general, not specific, therefore insufficient to raise a question for our consideration, and on this point cites several federal cases. *Doggett v. Ruppert,* 178 Ill. App. 230; *Henderson v. Henderson,* 162 Ill. App. 361.

Appellants assign as error that "the verdict is not justified by the evidence"; that "the verdict is against the manifest weight of the evidence"; that "the verdict is against the law and the evidence"; that the trial court erred in overruling appellants' motion at the close of all the evidence in the case, to instruct the jury to find the appellants "not guilty"; that the trial court erred in not instructing the jury at the close of all the evidence in the case, to find appellants "not guilty"; that the verdict is excessive. We think these assignments of error are sufficient to raise the questions argued. *Chicago City Ry. Co. v. Schmidt,* 217 Ill. 396.

We have examined the evidence bearing on the matter of contributory negligence, as well as the matter of damages sustained, and on neither point are we disposed to interfere with the judgment rendered. It, therefore, only remains to consider whether the evidence is sufficient to maintain the charges of negligence, as alleged in plaintiff's declaration.

There is little dispute as to the actual facts. Defendants at the time in question operated their cars in Adams street, a public highway in the City of Chicago, extending east and west. On this street were double tracks used by the defendants' westbound cars, running over the north track, eastbound cars running over the south track. The eastern terminus of these tracks was a short distance west of the west building line of State street, which extended north and south at right angles to Adams street. One block to the west Adams street was intersected at right angles by Dearborn street. About 100 feet west of the west building line of State street was a switch or cross-over from the north or westbound track to the south or eastbound track. Eastbound cars, however, ran on the south track to the end of the line. When cars started west they ran first on the south track, and then crossed over to the north track on this switch.

The Fair building, so called, was situated on the northwest corner of said intersection of State and Adams streets, fronting on both streets.   Another building was, at this time, being erected at the southwest corner of State and Adams streets.   It was a building 18 stories or more in height, and the erection of its foundation resulted in the street caving in, and the street was at the time in question being repaired, the Gas Company working at one end of the street, and the City Improvement Association at the opposite end of it.   The paving blocks had been taken out on the south side of Adams street for a distance of about 175 feet west of the building line of State street.   West of that the pavement was undisturbed.   This condition of Adams street had existed for several weeks prior to the accident in question.

The street car in use at the time of the accident was a large "pay as you enter car," about 50 feet in length.   The accident to plaintiff occurred September 2, 1915, at about 8:30 o'clock in the morning. Plaintiff t¹ ⁻ⁿ lived at Hannibal, Missouri, and at about 8 o'clock that morning arrived in Chicago, at the Union Station, located on Adams street.   She was then unmarried, and was accompanied by her sister. They came to Chicago for the purpose of visiting an aunt who lived on Langley avenue, in the aforesaid city.   They were met at the station by a cousin, Miss Margaret Higgins.   At the station the three boarded an eastbound car of defendants on Adams street and rode to the end of the line.   The car stopped 22 feet west of the west building line of State street.   It was not crowded.   There were some twenty or twenty-five persons on it.   These three alighted from the front step of the street car, and it is undisputed that directly under the step of the car the brick or blocks with which the street had been paved were torn up from the center of the street to the curb, and that for quite a distance the surface of the street was

rough and uneven. There was evidence for the plaintiff that the distance from the step by which she descended to the ground was a little more than 2 feet. The blocks which had been removed from the street were piled up on the side of the walk near the curb, and this, as well as the whole condition of the street, could be plainly seen by any one, it being a bright clear morning.

As to the manner of her injury plaintiff testified:

"I was the first of the three of us to leave the street car. I don't remember if anybody had left the street car before I did. I left the street car from the front. I did not see the front door of the car opened. When I got to the front door it was open. I don't remember if there was anybody standing in the front end of the front vestibule of the car. The motorman of the street car was in the front end, he was standing in front where they always stand. The right-hand door of the front vestibule was the one that was open, as I was facing towards the end of the car. I don't remember if there was any other door open in the front end of the car. I was not carrying anything in my hands as I started to leave the car, only a purse. The car at that time was standing still. * * * Well, facing south. * * * With the left hand, and then I stepped out on the ground with my right foot, and then what happened—the right ankle turned and I fell. * * * As soon as I had fallen I tried to stand, but the pain being so great, I fainted."

On cross-examination plaintiff said:

"When I stepped down on to the step I either took hold of the handrail then or already had hold of it, so that when I stepped on the step of the car at that time I had hold of this handrail, and was facing south. I don't remember whether, as I stepped down, I was still facing straight south or facing partly in the direction of the front of the car. As I stepped from the platform down to the step of the car, I looked where I was going and could see the step there, and in seeing the step, I could see the ground right in front of the step."

It is not suggested and there is no proof that defendants had any control of the public streets at the place where the accident occurred.  The general rule that a carrier of passengers has cast upon it a duty to furnish a safe place for the passenger to alight has only a qualified application to street railway companies operating on the surface of public streets, which they do not control.  This qualification obtains because of the nature of the business which such street railways transact, and this distinction is recognized by the text-writers and the courts.  Thus in Booth on Street Railways (2nd Ed.), sec. 326, it is said:

"But the general rule, applicable alike to general traffic roads and street railways, that all parts of their stations, platforms and the approaches thereto must be kept in a safe condition, cannot be extended so as to include the public street in which passengers are received and discharged, and over which the street railway has no control.  The street is in no sense a passenger station for the safety of which the company is responsible."

And in Thompson on Negligence, sec. 2712, that author says:

"The duty of a common carrier of passengers to provide a reasonably safe place for receiving and discharging his passengers can have but a qualified application to street railways, where the passengers are usually taken up and discharged upon the surface of the street.  Such a company is not, for instance, answerable in damages on the footing of negligence because its motorman stopped the car at a place where the pavement of the street was partially torn up for repairs, without informing the passenger of its condition, and warning him to be cautious in alighting from the car, where its condition is plainly apparent."

As authority the author cites *Bigelow v. West End St. Ry. Co.*, 161 Mass. 393, which sustains the doctrine stated.  Thus in *Sweet v. Louisville Ry. Co.*, 113 Ky. 15, 67 S. W. 4, the court said:

"If the street at the place of discharging passengers presents a dangerous condition to one alighting there, and such danger is obvious to the passenger, the carrier is not liable to him for injuries received from such defects. But where the danger is known, or is such as must have been known to the carrier and is unknown to the passenger, as where because of the darkness he cannot see it, the carrier is bound to warn the passenger of the danger, or to assist him in safely alighting, or stop the car at-a point beyond or short of the dangerous point."

Another line of cases seems to hold that a passenger who, in alighting from a car, has as good an opportunity as the company or its servants to observe the conditions, and to know whether such conditions are dangerous will, in case he attempts to alight under these conditions, be held guilty of contributory negligence in case he is injured. In *Whitmore v. Detroit United Ry.*, 185 Mich. 46, 151 N. W. 651, the court quoting from Nellis on Street Railways, sec. 308, announced the law as follows:

"But when a passenger in alighting from a car has as good an opportunity as the company or its servants to observe the conditions which confront him, and to know as well as they whether such conditions are dangerous to him in an attempt to alight, he is held to be guilty of contributory negligence, precluding a recovery in case he is injured. If the street at the place of discharging a passenger presents a dangerous condition to one alighting there, and such danger is obvious to the passenger, the carrier is not liable to him for injuries received from such defects."

Applying these rules of law to the instant case, we think the evidence fails to prove that the defendants were guilty of negligence as alleged in either count of the declaration. It is admitted by plaintiff that she saw and knew the whole situation just prior to alighting from the car. She says it was a little further from the ground than she thought, but defendants were in no way responsible for her failure to

correctly estimate this distance.    Why warn her of the things she could plainly see and already knew?

Nor are we able to see any proof of other negligence alleged.    Plaintiff and her friends chose for themselves the place in which they would alight; they were not directed to leave the street car.    It had been run to the end of defendants' line, and necessarily stopped there.    Plaintiff could have alighted at any other stopping place had she chosen so to do.    Neither she nor any other passenger, so far as the evidence disclosed, was required by the defendants or their servants to alight at the place at which she was injured.    True, plaintiff was a stranger in the city, but her cousin who accompanied her and on whom she evidently relied was not.    She did not seek advice or information from any servant of the defendants.    It was broad daylight; the situation was plain to everybody.    She evidently relied upon her own judgment and the judgment of those who accompanied her.    We can see no theory upon which defendants can be held guilty of negligence, and if any such theory were adopted, it would, at the same time, require us to hold that plaintiff was guilty of contributory negligence.    The accident was unfortunate, but we think without negligence on the part of the defendants. Plaintiff cites and relies on *Slocum v. Peoria Ry. Co.*, 179 Ill. App. 317, and *West Chicago St. R. Co. v. Buckley*, 102 Ill. App. 314.    In the first-named case it appears the plaintiff told the conductor that she wished to get off at Armstrong avenue, but he ran the car 50 feet or more past it to a siding, where he stopped and asked the passengers to alight, and the place of alighting where plaintiff asked to have the car stopped was in good condition, but the place where the conductor invited her to alight was in a torn-up and rough condition.    Moreover, it was dark at the time and the plaintiff stepped off supposing she was at the crossing where she had requested she might be

permitted to alight. These facts clearly distinguish that case from this one. The second case relied on is also clearly distinguishable. There the conductor, at a passenger's request, let her off in the middle of a block instead of at the crossing. She was an old lady and just after alighting, and while crossing on an adjacent and parallel track of the defendant, was struck by one of its cars coming on that track, and from an opposite direction. The negligence charged in the declaration was that of the servants in control of the car, running on the parallel track. These cases on which plaintiff relies do not sustain her right to recover, and the judgment will be reversed with a finding of fact.

*Reversed with a finding of fact.*

BARNES, P. J., and GRIDLEY, J., concur.

Finding of fact. We find that the defendants Chicago Railways Company and Chicago City Railway Company were not guilty of any negligence proximately tending to cause the injuries for which the plaintiff sues in this case.