C. C. DEWELL et al. Plaintiffs in Error, vs. THE COMMIS-
SIONERS OF SNY ISLAND LEVEE DRAINAGE DISTRICT,
Defendants in Error.

*Opinion filed February 20, 1908.*

1. DRAINAGE—*section 59 of Levee act, authorizing creation of
sub-districts, construed.* Section 59 of the Levee act, authorizing
the creation of sub-districts, is a valid act for the purposes in-
tended, but it does not authorize the inclusion, in a sub-district, of
any lands except those of the petitioners and lands over which the
proposed ditches and drains will be constructed.

2. CERTIORARI—*when certiorari is proper remedy to have drain-
age proceedings reviewed.* Where the county court has included
in its order establishing a sub-district under section 59 of the Levee
act, lands not authorized by statute to be included in the district it
has exceeded its jurisdiction, and the owners of the lands so ille-
gally included are entitled to a writ of *certiorari* from the circuit
court to review and quash the proceedings of the county court.

WRIT OF ERROR to the Circuit Court of Pike county;
the Hon. HARRY HIGBEE, Judge, presiding.

WILLIAMS & WILLIAMS, for plaintiffs in error.

MATTHEWS, ANDERSON & MATTHEWS, for defendants
in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is a proceeding by *certiorari* to review and quash
the proceedings of the county court of Pike county under a
petition, under section 59 of the Levee act, to establish a
sub-drainage district. The petition for the establishment
of the sub-district was referred to the drainage commission-
ers of the Sny Island Levee Drainage District, who caused
a survey, profiles, plats and specifications of the proposed
work to be made, and filed the same in the county court
with their report that the proposed drains and ditches, as
shown by their survey, profiles and plats, would drain 9637

acres, that the costs of the work would be $27,822.15, that the benefits would far exceed the costs, and recommended the establishment of the district; that a day be fixed by the court for the hearing, and that notice be given "to the petitioners herein and to all other persons interested in the said lands." On the day set for the hearing, upon the petition and report of commissioners, plaintiffs in error and certain other land owners in the proposed sub-district filed objections to the report and moved the court to dismiss the proceeding as to the lands owned by each of them, which objections and motion were overruled by the court and an order and decree entered approving and confirming the report of the commissioners and for the organization of the sub-district. Some of these objections raised the question that there was no authority given by the law to include in the sub-district any lands except those of the petitioners and the lands over which the proposed ditches and drains were to be constructed. Plaintiffs in error, Dewell, Dolbeare and Ridenour, appealed from the order of the county court to the circuit court, where, on motion of defendants in error, the appeal was dismissed. From this order of the circuit court they prosecuted an appeal to the Appellate Court for the Third District, and this appeal also was dismissed by said Appellate Court. Plaintiffs in error then filed their petition in the circuit court of Pike county for a writ of *certiorari* to the county court. The writ was issued in vacation, returnable to the June term, 1907, of said court. A return was made to the writ at said term and on motion of defendants in error the writ was quashed, and a writ of error was sued out of this court to review the judgment of the circuit court quashing said writ.

The organization of the Sny Island Levee Drainage District could not be, and is not sought to be, questioned in this proceeding.

Plaintiffs in error contend, first, that section 59 of the act of 1879, commonly known as the Levee act, is uncon-

stitutional; and second, that if it can be held to be a valid act, it authorizes the assessment only of the lands of the petitioners and the lands of others over which the proposed drains and ditches are proposed to be constructed, and that no other lands can be embraced in the sub-district and assessed to pay the cost of the proposed work. If the first proposition is correct, it is said the court was without jurisdiction to take any steps or make any order for the organization of the sub-district; that if the first proposition is incorrect and the second one correct, the county court exceeded its jurisdiction in including in the sub-district other lands than those of the petitioners and the lands over or through which the proposed drains or ditches were to be constructed, and it is contended that in either event the writ of *certiorari* is the proper remedy to review the proceedings of the county court.

Section 59 of the Levee act (Hurd's Stat. 1905, p. 794,) reads as follows, viz.: "If, after an assessment of lands throughout the district has been made, for the purpose of constructing the work laid off according to the profiles, plats and specifications of the commissioners, as reported and confirmed, it shall appear to the commissioners, on application of some owner or owners of land in the district, that additional ditches, drains, outlets, or other work over other lands are needed, in order to afford complete drainage by outlets, or protection to some particular tract or tracts of land of such owner, it shall be the duty of such commissioners to examine such lands, and lay off and make plans, profiles and specifications of such additional work, and costs of the same, and make a special report thereof, and file the same in the county court. Such report being filed, the commissioners shall give the owner who made such application, and other persons interested in such tracts of land over which the proposed ditches or drains are sought to be constructed, ten days' notice of the filing and hearing of such report in the manner required by section 3 of this

act; said notice shall state that the commissioners will appear at a day mentioned in said notice, and ask said court for a confirmation of such special report; and upon confirmation thereof by the court, a special assessment of benefits and damages shall be made upon the particular lands benefited by the proposed work, by the commissioners or a jury; and like proceedings shall be had therein as in other cases of assessment of benefits and damages provided by this act. The affidavit of any of the commissioners, or any other creditable person, of the posting and mailing thereof affixed to a copy of said notice shall be sufficient evidence of the posting and mailing of said notices, and the certificate of the publisher of the newspaper in which the said notice was published shall be sufficient evidence of the publication of such notice. Upon confirmation of said special report by the court, it shall be the duty of the court to declare the lands found to be affected by the work proposed by said special report, to be organized into a sub-district, and all assessments received or collected in such sub-district for the work of such sub-district, shall be kept as a separate fund belonging to such sub-district."

So far as we are informed by the briefs of counsel, the construction of this section has never been before this court. The only case cited where a proceeding for the establishment of a sub-district under section 59 has been before this court is *Soran v. Comrs. of Union Drainage District,* 215 Ill. 212, but the only question involved in that case was the correctness of a judgment of the county court disallowing the petition of certain land owners, after an assessment had been made, to abandon the proposed work.

By section 59 it is provided that if it shall appear to the commissioners, "on application of some owner or owners of land in the district, that additional ditches, drains, outlets, or other work over other lands are needed, in order to afford complete drainage by outlets, or protection to some particular tract or tracts of land of such owner,

it shall be the duty of such commissioners to examine such lands, and lay off and make plans, profiles and specifications of such additional work, and costs of the same, and make a special report thereof, and file the same in the county court. Such report being filed, the commissioners shall give the owner who made such application, and other persons interested in such tracts of land over which the proposed ditches or drains are sought to be constructed, ten days' notice of the filing and hearing of such report in the manner required by section 3 of this act." Said section further provides that upon confirmation of said report by the court "a special assessment of benefits and damages shall be made upon the particular lands benefited by the proposed work, by the commissioners or a jury; and like proceedings shall be had therein as in other cases of assessment of benefits and damages provided by this act." Upon the confirmation of the report it is made the duty of the court "to declare the lands found to be affected by the work proposed by said special report, to be organized into a sub-district."

We do not think section 59 is in conflict with any constitutional provision. It is a valid act for the purposes for which it was intended. We do not understand the purpose of the act was to authorize the inclusion in a sub-district of any lands except those of the petitioners and those over which the proposed ditches or drains are sought to be constructed. The language of the act itself seems to admit of no other construction. Under its provisions, where one or more land owners own land in a district already organized, so situated with reference to the drains and ditches of the district as not to have outlets for complete drainage, such owner or owners may petition for the organization of a sub-district and the construction of such ditches and outlets as will afford proper drainage for the petitioners' land. If the outlet for such drainage could be had without entering upon the land of any one but the petitioners there would be no necessity for resort to the organization of a sub-dis-

trict; but where lands of others than the petitioners lie between their land and the proposed outlet, which we understand to be the situation contemplated by section 59, it would become necessary to procure authority to construct ditches over said lands, and section 59 was enacted for that purpose. That it was the legislative intent that no other lands than those of the petitioners and those over which the proposed ditches were sought to be constructed should be organized into a sub-district seems clear from the fact that no notice is required to be given of the hearing upon the report of the commissioners to any other persons. The language of the statute is, "the commissioners shall give the owner who made such application, and other persons interested in such tracts of land over which the proposed ditches or drains are sought to be constructed," ten days' notice of the filing of such report and the hearing. While the notice is required to be given in the same manner as is required by section 3 of the act in the original organization of a district, the "persons interested" are defined to be the owner or owners who made the application for the organization of the sub-district and those owning lands over which the proposed ditches are sought to be constructed, and the notice is expressly limited to them. So construed, section 59 is a valid act for the purposes for which it was intended. But if it be construed as intending to confer power and authority upon the commissioners and the county court to include in a sub-district other lands than those of the petitioners and those over which the proposed ditch is to be constructed, and assess them for the cost of the work, without notice to the owners, it would be taking property without due process of law, and unconstitutional. It is no answer to this proposition to say that notice was, in fact, given. If the statute authorized including lands in the district without notice to the owners it would be invalid, and giving notice in such case could not give the statute validity. To our minds it would be doing violence to both

the letter and spirit of the act to construe it as intending to authorize including in a sub-district any other lands than those mentioned in the statute, the owners of which only are required to be notified, namely, the lands of the petitioners and those over which the proposed ditches are to be constructed. As to such lands the statute authorizes them to be organized into a sub-district and benefits assessed against them for the cost of the proposed work. In so far as the county court attempted to include other lands in the sub-district it was without jurisdiction, and as to said other lands its order and decree was void.

Defendants in error contend that the judgment of the circuit court quashing the writ of *certiorari* was correct, first, because plaintiffs in error have a right to have the legality of the proceedings reviewed by appeal or writ of error from the judgment of confirmation when it shall have been entered; and second, because the judgment and decree of the county court upon the petition and report of the commissioners was not a final judgment, and that *certiorari* will not lie in any case until a final order or judgment has been rendered.

Prior to its repeal, in 1907, section 25 of the Levee act provided for appeals from and writs of error to county courts after judgment of confirmation of the assessment roll had been entered, and in *Mack v. Polecat Drainage District,* 216 Ill. 56, we held such appeal or writ of error brought up for review the order of the court declaring the district duly organized. No provision was made for an appeal or writ of error prior to the judgment of confirmation, and it is insisted that no order is final except the judgment of confirmation, and as the statute in force at the time the proceedings here in question were begun and had, authorized a review of the order of the court declaring the district duly organized, the writ of *certiorari* will not lie. The act of 1907, repealing section 25, contained a clause "saving and reserving, however, any rights that may have

heretofore accrued thereunder." In the view we take of this case it is unnecessary to determine whether the repeal of section 25 would deprive plaintiffs in error of the right to appeal from the judgment of confirmation, and whether if it did do so, they might still have the proceedings reviewed by writ of error. None of the plaintiffs in error were petitioners for the proposed drainage, and the proposed ditch, as located by the commissioners, did not pass over the lands of any of them except Dolbeare. The petition described the land through which it was desired the proposed ditch should be constructed and gave the names of the owners thereof. It described no other lands sought to be embraced in the sub-district and gave the names of no other owners. The commissioners' report changed the route and location of the proposed ditch as described in the petition, so that it would pass through other lands not described in the petition and would not pass through certain lands described therein. In their report they described more than 9000 acres of land which in their judgment would be benefited by the proposed ditch, a large amount of which was not owned by the petitioners and over which the proposed ditch would not pass. The court, by its order, included all the lands described in the commissioners' report within the sub-district and ordered the commissioners to proceed to assess the same. In so far as this order of the court affected the lands of petitioners and the lands over which the proposed ditch was to be constructed the court had jurisdiction to act, and if it had proceeded no further the regularity of its acts would not be reviewable by writ of *certiorari,* but in ordering other lands to be included in the district and assessed for the cost of the proposed work the court exceeded its jurisdiction, and while by the statute then in force neither an appeal nor writ of error would lie to review it, in making lands of others than those of the petitioners and lands over which the proposed ditch was to be constructed a part of the district, it was

for that purpose and to that extent a final order. Even if plaintiffs in error over whose land no part of the ditch was to be constructed would have had the right, upon an appeal from a judgment of confirmation, to have shown that their lands were not liable to assessment, we do not understand they could have had them detached from or taken out of the district. In our opinion they had not only the right to have their lands exempted from assessment, but also to have them left outside of the district. The order, therefore, including their lands in and making them a part of the district being final in that respect and not reviewable upon appeal or writ of error, we are of opinion it may be reviewed by writ of *certiorari.*

In *Hyslop* v. *Finch,* 99 Ill. 171, it was said (p. 184) : "There are two classes of cases in which, according to the previous decisions of this court, a common law *certiorari* will lie: First, whenever it is shown that the inferior court or jurisdiction has exceeded its jurisdiction; second, whenever it is shown that the inferior court or jurisdiction has proceeded illegally and no appeal or writ of error will lie." That case was cited and the rule there announced followed in *White* v. *Wagar,* 185 Ill. 195. Numerous other authorities to the same effect will be found cited in those cases. In this case the court exceeded its jurisdiction by including in the district, for assessment, lands not authorized by the statute under which the proceeding was had, to be made a part of said sub-district, and we are of opinion the writ of *certiorari* was a proper remedy to review and correct the proceeding.

The judgment of the circuit court will therefore be reversed and the cause remanded to that court, with directions to enter a judgment quashing the proceeding in so far as it is attempted to include within the sub-district any lands except those of petitioners and those over which the proposed ditch is to be constructed.

*Reversed and remanded, with directions.*