THE COMMISSIONERS OF THE SNY ISLAND LEVEE DRAIN-
AGE DISTRICT, Defendants in Error, *vs.* CHARLES C.
DEWELL *et al.* Plaintiffs in Error.

*Opinion filed October 26, 1912—Rehearing denied Dec. 6, 1912.*

1. DRAINAGE—*purpose of amendment of 1909 to section 59 of Levee act.* The purpose of the amendment of 1909 to section 59 of the Levee act was to provide a method whereby, upon the application of a majority of the adult land owners owning one-third of the lands in a proposed sub-district or upon application of one-third of the adult land owners owning a major part of the lands, a sub-district may be established which shall include all the lands of the sub-district, regardless of whether the owners sign the application or the proposed drains and ditches cross their lands.

2. SAME—*extent to which sub-district may be formed upon application of some owner or owners.* Under section 59 of the Levee act, both prior to and subsequent to its amendment in 1909, a sub-district may be organized upon application of "some owner or owners," which shall include their own lands, but they cannot force into the district other lands not crossed by the proposed ditches and drains, without the consent of the owners of such lands.

3. SAME—*when the county court cannot organize sub-district.* Under section 59 of the Levee act, as amended in 1909, the county court is without jurisdiction to organize a sub-district embracing all lands therein, including those of owners who have not signed the application and which are not crossed by the proposed ditches and drains, unless the application is signed by a majority of the adult land owners owning one-third of the lands in the proposed sub-district or by one-third of the adult land owners owning a major part of the lands.

4. SAME—*right of county court to allow signatures to be withdrawn upon hearing.* Upon the hearing of an application to organize a sub-district under section 59 of the Levee act, the county court may purge the application of signatures improperly or fraudulently attached thereto, and may, in a proper case, permit signatures to be withdrawn where changes detrimental to the signers have been made in the plans since they attached their signatures; and in the absence of any showing to the contrary it will be presumed that the county court properly exercised its discretion in permitting signatures to be withdrawn.

5. SAME—*what does not prevent the organization of new sub-district.* Where the Supreme Court has held that a large propor-

tion of the lands embraced in a sub-district have been improperly included therein, and the effect of such holding is to practically destroy such sub-district, the commissioners may abandon the sub-district and a new one may be established in the same territory by the county court upon a properly signed application and a proper report of the commissioners.

6. SAME—*commissioners cannot be required to file an itemized statement on organizing sub-district.* Upon the hearing of an application to organize a sub-district under section 59 of the Levee act the commissioners cannot be compelled to file an itemized statement of prior receipts and disbursements, as the provisions of section 37 of such act requiring such itemized statement do not apply to a proceeding for the establishment of a sub-district.

COOKE, J., dissenting.

WRIT OF ERROR to the County Court of Pike county; the Hon. PAUL F. GROTE, Judge, presiding.

W. E. WILLIAMS, and A. CLAY WILLIAMS, for plaintiffs in error.

RAY N. ANDERSON, and BEN H. MATTHEWS, for defendants in error.

Mr. JUSTICE HAND delivered the opinion of the court:

This is a writ of error to the county court of Pike county to review the judgment of that court in entering an order establishing a sub-drainage district in said county, designated as the Kiser Creek Sub-drainage District, and which sub-district is located within the boundaries of the Sny Island Levee Drainage District, under the provisions of section 59 of the Levee act, as amended in 1909, (Hurd's Stat. 1911, p. 894,) which reads as follows:

"Sec. 59. If, after an assessment of lands throughout the district has been made, for the purpose of constructing drains, or ditches, or enlarging or repairing the main drains or ditches of said district, according to the profiles, plats and specifications of the commissioners, as reported and confirmed, there remain lands in particular localities in said

district, which are in need of more minute and complete drainage, and it shall appear to the commissioners, on application of some owner or owners of land in the district, that in their judgment additional ditches, drains, outlets or other work are needed, in order to afford more complete drainage, and in all cases where upon written application to the commissioners, signed by a majority in number of the adult land owners in such locality owning in the aggregate more than one-third of the land affected, or by the adult land owners of a major part of the land in such locality who constitute one-third or more of the owners of the land affected, it shall appear that additional ditches, drains, outlets or other work are necessary in order to afford more complete drainage to such locality, it shall be the duty of such commissioners to examine such lands, and lay off and make plans, profiles and specifications of such additional work, and an estimate of the costs of the same and make a special report thereof, which special report shall describe all of the lands which will be either benefited or damaged by such additional work, together with the names of the owners, when known; such report being filed with the clerk of the county court, the commissioners shall give to all persons whose lands will be either benefited or damaged, whether they signed an application for additional work or not, three weeks' notice of the filing and hearing of such report in the manner required by section three (3) of this act; said notice shall state that the commissioners will appear before the county court at a day mentioned in said notice, and ask said court for a confirmation of such special report; and upon said hearing the court shall pass upon the sufficiency of the application, together with all other matters contained in said report, and upon confirmation thereof by the court, a special assessment of benefits and damages shall be made upon all of the lands benefited or damaged by the proposed work, in the manner provided for the making of original assess-

ments of benefits and damages by this act; and like proceedings shall be had therein as in other cases of assessment of benefits and damages, provided by this act. The affidavit of any of the commissioners, or any other creditable person, of the posting and mailing thereof affixed to a copy of said notice shall be sufficient evidence of the posting and mailing of said notices, and the certificate of the publisher of the newspaper in which the said notice was published, shall be sufficient evidence of the publication of such notice. Upon confirmation of said special report by the court, it shall be the duty of the court to declare all the lands found to be affected by the work proposed by said special report, to be organized into a sub-district, and all assessments received and collected in such sub-district, for the work of such sub-district, shall be kept as a separate fund belonging to such sub-district, and said commissioners shall have the power if necessary to issue bonds against any assessment or assessments in said sub-district in the same manner as bonds are issued in original districts. The commissioners of the principal district shall be *ex-officio* commissioners of the sub-district. Any lands lying outside of any sub-district as organized, the owner or owners of which shall thereafter make connection with any ditch or drain within any sub-district, or whose lands are or will be benefited by the work of such sub-district, shall be deemed to have made voluntary application to be included in such sub-district, and thereupon the commissioners shall make complaint as provided in section fifty-eight (58) of this act as to lands lying outside of a drainage district as organized, and like proceedings shall be had thereon as in cases of complaints made under said section fifty-eight (58)."

The facts as they appear from the record are, that Kiser creek flows from the east and empties into the main channel of the Sny Island Levee Drainage District; that the sub-district as organized is designed to afford additional

256 — 9

drainage to the lands of the Sny Island Levee Drainage District tributary to Kiser creek; that the application filed with the drainage commissioners of the Sny Island Levee Drainage District for the establishment of said sub-district was signed by twenty-three land owners, who owned a majority, in amount, of the lands of the sub-district; that the commissioners employed an engineer, went upon the lands of the sub-district, and prepared and filed a report in the county court of Pike county recommending the establishment of the sub-district, and that the proper statutory notices were given to the land owners; that in the county court a number of the land owners who had signed the application to the commissioners for the establishment of said sub-district withdrew their names from the application by leave of the county court and other names were added to the application; that the court found, upon the final hearing, the total number of adult land owners in the district to be fifty-nine, of whom eighteen had signed the application, who owned a major part of the lands in the sub-district, and an order was entered by the county court establishing the sub-district.

Three grounds of reversal are urged in this court: First, the court erred in establishing the sub-district, embracing the lands of others than those who signed the application and those across whose lands it was proposed to construct the work, upon an application signed by less than one-third of the adult land owners of the sub-district owning a major part of the lands of the sub-district; second, the court erred in establishing the sub-district, which included lands embraced in another sub-district established for the same purpose and under the same statute; third, the court erred in denying the motion of the plaintiffs in error, made upon the trial, for a rule upon the commissioners to file an itemized account, under the provisions of section 37 of the Levee act, of their receipts and expenditures made in the Sny Island Levee Drainage District.

The commissioners of the Sny Island Levee Drainage District, upon the application of certain land owners owning land upon Kiser creek, in 1906 recommended to the county court of Pike county the establishment of a sub-drainage district within the boundaries of the Sny Island Levee Drainage District containing 9637 acres of the lands of said Sny Island Levee Drainage District, and the court in that year established said sub-district under the provisions of section 59 of the Levee act as then in force, and the said sub-district, as established, contained the lands of land owners who had not signed the application for the establishment of the sub-district and whose lands were not crossed by the drains and ditches of the proposed sub-district. This court, in the case of *Dewell* v. *Sny Island Drainage District,* 232 Ill. 215, upon a writ of error sued out to review the judgment of the circuit court of Pike county rendered in a common law *certiorari* proceeding brought in that court to review the record of the county court establishing said sub-district and sustaining the establishment of said sub-district, held that while section 59 of the Levee act as then in force was constitutional for the purposes intended to be covered by its provisions, said section did not authorize the organization of a sub-drainage district which included the lands of land owners who had not signed the application to the commissioners for the establishment of the sub-district and whose lands were not crossed by the drains and ditches of the proposed sub-district, and reversed the judgment of the circuit court and remanded the cause to that court, with directions to enter an order quashing the proceedings establishing said sub-district in so far as it was attempted to include within the sub-district any lands except those of the persons who signed the application asking that the sub-district be established and those lands over which the proposed drains and ditches of the sub-district were to be constructed. No remanding order of the judgment disposing of the writ of

error by this court in that case was ever filed in the circuit court of Pike county, but the sub-district was abandoned by the commissioners of the Sny Island Levee Drainage District and upon the amendment of section 59 of the Levee act the sub-district here involved was sought to be organized, and the main question here to be determined is, can a sub-district be established, under the provisions of section 59 of the Levee act as now in force, which shall include the lands of persons who have not applied to have a sub-district established and over whose lands the proposed drains and ditches of the sub-district do not pass, except upon an application to the commissioners signed by a majority, in number, of the adult land owners in such locality owning, in the aggregate, more than one-third of the lands affected, or by the adult land owners of a major part of the land in such locality who constitute one-third or more of the owners of the land affected?

It is apparent that when the application was presented to the commissioners it was the view of the applicants that it was necessary that the application for the establishment of the sub-district should be signed by at least one-third of the adult land owners in the locality of the proposed sub-district who owned a major part of the land, and that after the county court had permitted a sufficient number of the signers of the application to withdraw their names from the application, so that one-third of the adult land owners signing said application who owned a major part of the lands of the sub-district did not remain upon the application, they then took the position, which the county court also adopted, that it was not necessary to have to the application the signatures of one-third of the adult land owners who owned a major part of the lands of the sub-district, to authorize the establishment of the sub-district, but that the sub-district might be lawfully established upon the application of "some owner or owners" of land located within the boundaries of the proposed sub-district. It was

held by this court in the *Dewell case* that section 59, prior to its amendment, authorized one or more land owner or owners to apply for the establishment of a sub-drainage district for the more proper drainage of his or their lands, but that he or they could not force other lands into the proposed sub-district without the consent of their owners unless the proposed drains and ditches of the sub-district crossed such lands.

We are of the opinion, therefore, that when section 59 was re-written and re-adopted as an amendment to the Levee act, the only material change made in its provisions was to provide a method whereby, upon the application of a majority of the adult land owners owning one-third of the lands, or upon the application of one-third of the adult land owners owning a major part of the lands, a sub-district might be established which should include all the lands of the sub-district, whether all the land owners were willing or not. To construe the amended section so as to permit the establishment of a sub-district which should include all the lands in the proposed sub-district upon the application of some owner or owners of land in the sub-district, would permit one land owner in the territory tributary to Kiser creek to cause the establishment of a sub-district which should include all the lands drained by that creek, against the protest and desire of all the other land owners within the boundaries of the proposed sub-district, which would, we think, be so unreasonable a construction of section 59, as amended, that it should not be adopted unless the language of the section is so clear and unequivocal that no other construction could be placed upon it. The defect in the section sought to be cured was that which prevented the establishment of a sub-district without the consent of all land owners in the sub-district and of such as would voluntarily ask for its establishment or over whose lands the drains or ditches of the proposed sub-district passed, and it was not its purpose to give to a single land

owner or a number of land owners of the district a right to bring into a sub-district their own lands if he or they desired to do so for the purpose of more perfect drainage, as they had that right under and by virtue of section 59 as it stood before the amendment.

It is said, however, by the defendants in error, that section 59, as amended, provides for the establishment of a sub-district, first, upon the application of "some owner or owners," which method is discretionary with the commissioners; and secondly, upon the application of a majority of the adult land owners owning one-third of the lands in the sub-district or upon the application of one-third of the adult land owners owning a major part of the lands of the sub-district, which method is mandatory. We find no such distinction in said section of the statute. The first provision of the statute reads as follows: "On application of some owner or owners of land in the district, that in their judgment additional ditches, drains, outlets or other work are needed, in order to afford more complete drainage, * * * it shall be the duty of such commissioners to examine such lands," and file a report, etc.; while the second provision is, "In all cases where upon written application to the commissioners, signed by a majority in number of the adult land owners in such locality owning in the aggregate more than one-third of the land affected, or by the adult land owners of a major part of the land in such locality who constitute one-third or more of the owners of the land affected, it shall appear that additional ditches, drains, outlets or other work are necessary in order to afford more complete drainage to such locality, it shall be the duty of such commissioners to examine such lands," and file a report, etc. There is no more discretion conferred upon the commissioners by the statute when the application is made by "some owner or owners" than there is conferred upon them when the application is made by a majority of the adult owners owning one-third of the land

affected or by one-third of the land owners owning a majority of the land affected, and while the section is not entirely clear and free from ambiguity, we are of the opinion that no change was intended to be made in the section when it was re-framed and re-adopted, other than to provide a method whereby all the lands of a sub-district might be brought under the provisions of the statute when the application was made by a majority of the adult land owners owning one-third of the lands or by one-third of the adult land owners owning a majority of the lands, and that the provision as to application being made by "some owner or owners" of land was intended only to confer upon such applicant or applicants the right to have a sub-district formed which should afford his or their own lands drainage, and, if necessary, to acquire an outlet for the drainage of his or their lands, and as to such owner or owners the statute is to be construed just as it was construed in the case of *Dewell* v. *Sny Island Drainage District, supra.* We therefore conclude that as the application in this case was not signed by the requisite number of land owners the county court was without jurisdiction to order the establishment of said sub-district.

It is, however, urged that originally the application as presented to the commissioners was signed by the requisite number of land owners under the statute,—that is, by one-third of the adult land owners in the proposed sub-district who owned a major part of the lands in the sub-district,—and that the land owners who were permitted afterwards to withdraw their names from the application having failed to withdraw their names before the commissioners had passed upon the application and filed their report and recommended the establishment of the sub-district, their withdrawal was too late and was without avail to defeat the establishment of the sub-district, and that the county court was powerless to permit the names of said land owners to be withdrawn from the application after

the report of the commissioners recommending the establishment of said sub-district had been filed in the county court. The record shows that certain land owners who had signed the application for the establishment of the sub-district before the order establishing the sub-district had been entered in the county court asked leave to withdraw their names from the application, and that the county court, over the objection of the commissioners, permitted them to withdraw their names from the application, and that the commissioners excepted to the action of the county court in permitting them to withdraw their names. There is nothing in the record to show upon what grounds said motion was allowed. The section of the statute under which this proceeding was had provides: "Upon the hearing the court shall pass upon the sufficiency of the application, together with all other matters contained in said report." The presentation of the application for the establishment of a sub-district to the commissioners and the report made by the commissioners to the court are both preliminary to the hearing which is to be had in the county court upon the application and the report, and we are impressed with the view that it was within the power of the county court upon the hearing and when it came to pass upon the sufficiency of the application, to purge the application of any names which might have been improperly or fraudulently attached thereto. We think, also, that if a name or names were attached to the application under the view that the boundaries of the sub-district were to include certain lands and certain drains and ditches and other work was to be done, and the plan and scheme of improvement were thereafter wholly changed and the boundaries of the sub-district were curtailed or extended, the county court, upon the hearing, might properly, in the exercise of a sound legal discretion, permit a name or names to the application to be withdrawn, otherwise a land owner might be entrapped into signing an application

for the establishment of a sub-district which would be of great injury, instead of a benefit, to his lands, and under such conditions to hold him to be absolutely bound by his signature to the application would amount to a fraud upon him. It has been repeatedly held by this and other courts that the signer of a petition or application should withdraw his name, if at all, in due time, and not wait until the tribunal to whom the same has been presented for action has acted. The basis of these decisions is, we think, that a petitioner or applicant should not be permitted to speculate upon the action of the tribunal which he has assisted in putting in motion, by waiting until the tribunal has acted, and if its action is satisfactory to him to stand by its action, but if it is not satisfactory, to overturn its action by withdrawing his name from the petition or application which forms the basis of the action of the tribunal which has decided contrary to his expectations or wishes. Here, the applicants who withdrew their names had withdrawn them before the court had passed upon the application, and we are unable to say, as a matter of law, the court permitted them to withdraw their names improperly. We think in a proper case the court might have permitted names to have been withdrawn from the application, and as all reasonable presumptions are in favor of the action of the county court and as the record does not show the county court improperly permitted the names of certain land owners to be withdrawn from the application, we must, in the absence of any showing, presume the action of the county court was justified by the showing made upon the motion entered by the parties who afterwards were permitted by the court to withdraw their names from the application. The following cases decided by this court fully discuss the right of a signer to withdraw his name from a petition, application or other paper, and when that right must be exercised: *Littell* v. *Board of Supervisors,* 198 Ill. 205; *Kinsloe* v. *Pogue,* 213 id. 302; *Commission-*

*ers of Highways* v. *Bear,* 224 id. 259; *Boston* v. *Kickapoo Drainage District,* 244 id. 577.

As the application does not appear to have been signed by one-third of the adult land owners of the proposed sub-district we are of the opinion that the sub-district was improperly established.

The contention that the territory included in the sub-district established in 1906 is the same as the territory included in the sub-district organized in 1909, and for that reason the new sub-district cannot be established, is, in our opinion, without force. This court, in *Dewell* v. *Sny Island Drainage District, supra,* held that a large proportion of the lands included in the first sub-district was improperly included therein and ordered that they should be eliminated from the sub-district. The effect of that decision was to substantially destroy that sub-district, and render it in such physical condition that the commissioners, as the county court found, abandoned that sub-district. We see no reason, under the circumstances of this case, why the establishment of that sub-district might not be abandoned by the commissioners and a new one established by the county court, acting upon a proper application by the land owners and a proper report by the commissioners. Furthermore, the county court, upon motion of the commissioners, entered an order dissolving the first sub-district, and no action has been taken by the defendants in error, by cross-error or otherwise, to call in question in this proceeding the action of the county court in that regard. We conclude that the establishment of the first sub-district, under the circumstances disclosed by this record, was no bar to the establishment of the new sub-district, and had the application for the establishment of the new sub-district been signed by the requisite number of land owners we would hold that the new sub-district was properly established. The old sub-district and the new sub-district would be represented by the same commissioners. There could,

therefore, be no conflict of authority between the sub-districts, and as both sub-districts were established by the same county court and the commissioners of both sub-districts are controlled by the same county court there is no danger of a double assessment for benefits. We think the cases of *Bishop* v. *People,* 200 Ill. 33, *People* v. *Crews,* 245 id. 318, and *People* v. *Lease,* 248 id. 187, are not in point.

A motion was made by the plaintiffs in error that the commissioners be required to file an itemized statement showing the disposition of the funds theretofore collected and disbursed by the commissioners of the Sny Island Levee Drainage District. We do not think the court erred in denying that motion. Section 59 of the Levee act does not require such statement to be filed, and in our opinion section 37 of the Levee act does not apply to a proceeding for the establishment of a sub-district.

We have referred to plaintiffs in error's second and third assignments of error, not because a decision thereon is necessary to a proper disposition of this case, but because those questions have been exhaustively argued and earnestly insisted upon by plaintiffs in error, and because if they are not disposed of in this opinion they will probably be renewed and urged on the application for the establishment of a new sub-district in the territory covered by the sub-district established in 1906 and the one involved in this writ of error.

The judgment of the county court of Pike county establishing the sub-drainage district referred to in this record will be reversed.                    *Judgment reversed.*

Mr. JUSTICE COOKE, dissenting.