**Lyda O'Shea, Appellee, v. Chicago Motor Coach Company, Appellant.**

**Gen. No. 43,226.**

Opinion filed April 11, 1946. Released for publication May 16, 1946.

BARRETT, BARRETT, COSTELLO & BARRETT, of Chicago, for appellant.

JOSEPH D. RYAN, LOUIS G. DAVIDSON and ARTHUR RYAN, all of Chicago, for appellee.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This action was brought by plaintiff, Lyda O'Shea, against defendant, Chicago Motor Coach Company, to recover damages for personal injuries alleged to have been sustained by her as the result of defendant's negligence. The jury returned a verdict finding defendant guilty and assessing plaintiff's damages at $2,500. Judgment was entered on the verdict and defendant appeals.

The substance of plaintiff's complaint is that defendant did not furnish her, a passenger on one of its buses, a reasonably safe place to alight therefrom.

Defendant offered no evidence upon the trial of this case. It appears from the evidence introduced in plaintiff's behalf that she and a friend, Miss Mary R. Fugate, lived in the same apartment at 4735 Drexel boulevard; that they were on their way home as passengers on a northbound Drexel boulevard bus about 9:45 p. m. on July 11, 1941; that when the bus was a short distance north of 49th street they gave the appropriate signal to the driver of their intention of

alighting at 48th street; that the usual stopping place for northbound Drexel boulevard buses at 48th street was north of the north crosswalk of said street and near the east curb of Drexel boulevard; that such usual stopping place was well lighted by a street lamp; that after plaintiff and Miss Fugate had signaled the driver of the bus to stop at 48th street they proceeded toward the front of the bus; that the bus went past the usual stopping place and came to a stop with its front end approximately 90 feet north of the north curb line of 48th street and its east side 10 or 15 feet from the east curb of Drexel boulevard; that it was very dark on the east side of the bus where it stopped, since there were no street lights which provided illumination there; and that the interior lights were on in the bus but they did not reflect onto the street.

It also appeared that after the driver stopped the bus he opened the front door thereof and Miss Fugate alighted first; that plaintiff then stepped down and, as she did, her right foot went into a crevice in the street and she was immediately thrown; that she was wearing a nurse's oxford with a two inch heel which was about an inch and a half wide, with rubber on it; that she did not know that there was a crevice in the street before she stepped into it; that she had no knowledge of the condition of the street where she alighted from the bus, as she had no occasion to walk over that part of it before the accident; that the driver said nothing to plaintiff about the condition of the street before she stepped down from the bus; that plaintiff sustained a complete fracture of the right femur just above the knee; that after she was injured plaintiff was carried to the step of the bus where she sat for 45 minutes until she was taken to the hospital in an ambulance; that during that period she did not look around to see just what caused her to fall; that none of plaintiff's witnesses made an inspection of the street on the night she was injured but Miss Fugate

went back to the scene of the accident the next afternoon and observed that there were many cracks in the street where plaintiff fell, varying in length, width and depth; and that the cracks where plaintiff lay after she fell were one and a half or possibly two inches wide and at least an inch deep.

Defendant's theory as stated in its brief is that "at the time of the occurrence complained of, it was not negligent in any respect and that it has no control over the streets or boulevards of the Chicago Park District, a Municipal Corporation, and that it is not within its power to maintain or construct said streets or boulevards. It is further the theory of the defendant that it is not liable for ordinary defects or unevenness of the surface of the streets at the place where its buses do stop, and that a passenger who in alighting from a motor bus has as good an opportunity as the defendant or its servants to observe the conditions of a street and to know that such condition will, in case she alights, be dangerous, she is guilty of contributory negligence."

Plaintiff's theory is that "the defendant negligently ran its bus beyond the regular stopping place where the illumination was very bright, and discharged the plaintiff, a woman 67 years old, at a very dark place where there were many wide cracks in the street which she could not see on account of the darkness, and in consequence her heel caught in one of these cracks as she was stepping down from the bus and she fell and sustained a complete fracture of the right femur just above the knee with displacement and overriding of the ends of the bone."

It is first contended that "the court erred in denying the defendant's motion and in refusing the defendant's instructions at the close of the plaintiff's case." In other words the defendant asserts that plaintiff failed to make out a prima facie case as to her freedom from contributory negligence and as to defend-

ant's negligent failure to furnish her a reasonably safe place at which to alight from its bus. In determining the questions of law presented by this contention the evidence must be considered in its aspect most favorable to plaintiff and all reasonable inferences arising therefrom must likewise be considered most strongly in her favor.

Was plaintiff guilty of contributory negligence as a matter of law, as defendant contends? Whether plaintiff was in the exercise of ordinary care for her own safety at and immediately prior to the time she was injured could only become a question of law if it could be said that no rational person would have acted as she did. When the bus stopped the driver opened the front door and thereby invited her to alight. Before she stepped down from the platform she noticed that the street immediately to the east of the bus was "quite dark . . . very dark." She placed her left hand on the handhold and when she stepped off the bus her foot went into a crevice in the street and she was thrown to the ground. She was given no warning by the driver as to the condition of the street. She was unaware of the presence of the cracks or of the condition of the street at that particular place, since she had no occasion previously to walk over that part thereof. She had a right to assume that the driver stopped the bus at a place where it was reasonably safe for her to alight, unless such place was obviously dangerous. While plaintiff was required to exercise ordinary care for her own safety as she was getting off the bus, it certainly was not her duty to scrutinize searchingly the ground on which she was about to step in alighting. As already stated, she had the right to assume that the driver of the bus was discharging her at a reasonably safe place and it was not negligence on her part to act upon that assumption unless the danger was so open and obvious as to challenge the attention of a reasonably prudent

person similarly situated. (*Jackson v. Seattle*, 15 Wash. (2d) 505, 131 P. (2d) 172.) There can be no question but that the evidence showed that plaintiff made out a prima facie case that she was not guilty of contributory negligence.

We will now consider defendant's contention that no evidence was adduced by plaintiff that proved or tended to prove that it was guilty of negligence as charged in the complaint.

■ Since it is often not only impracticable but impossible because of traffic conditions for a bus to stop at its usual stopping place to permit passengers to alight, ordinarily the mere failure of the bus to stop at its customary stopping place does not in itself constitute negligence. However, if for any reason a bus does not stop at its usual stopping place, it must stop at a place that is reasonably safe for the purpose of alighting.

No Illinois case has been cited and we have been unable to find one which considered the duty of a street car company or a bus company toward an alighting passenger who was injured by reason of a defective condition in the surface of a public street, such as was present here, at the point where the vehicle of the carrier stopped to permit such passenger to alight.

It is said by some authorities that inasmuch as street car companies and bus companies operate on the surface of public streets, which they do not control and which they are not obligated to maintain and keep in repair, the general rule that it is the duty of common carriers of passengers to provide a reasonably safe place for discharging their passengers has only a qualified application to such companies. (Thompson on Negligence, sec. 2712; Booth on Street Railways, 2nd ed., sec. 326.) The only possible qualification to the aforesaid general rule pertinent to the factual situation presented here is that found in 1 Nellis on Street Railways, 2d ed., sec. 308, where the

author said: "In case of a passenger injured in alighting from a street car owing to the condition of the street, it is said that liability exists when the dangerous condition of the street is known, or could have been known to the street railway company, but is unknown to the alighting passenger, unless he is warned or assisted to a safe place." The foregoing rule stated by Nellis is really neither an exception to nor a qualification of the general rule that street car companies and bus companies must furnish their passengers with a reasonably safe place to alight, since, as will be hereinafter shown, such companies are chargeable with knowledge of the condition of the streets over which their vehicles have been operated for any considerable length of time and since no liability would attach in any event for an injury to a passenger who alighted at a place which was obviously dangerous, even though a bus did stop there.

There was positive evidence that there was a dangerous condition in the street where the bus stopped and plaintiff was invited to alight; that plaintiff did not know of such condition and could not see it because of the darkness; and that she first became aware of it when her foot went into the crevice. While there was no positive evidence that the defendant knew of the existence of the dangerous condition of the street where its bus stopped, in our opinion there is evidence in the record from which it could be reasonably inferred by the jury that by the exercise of a proper degree of care the defendant could have known of such condition.

Defendant asserts in its brief that "the plaintiff did not offer any evidence in an effort to prove that the alleged cracks existed prior to the occurrence or that they existed for a period of time sufficiently long for the driver of the bus to have known of the existence of the same" and that "the record is completely absent of any evidence tending to show that the condition of the street as observed by Miss Fugate on the

day following the occurrence existed on the night of the event. It cannot be presumed that these alleged cracks existed on the night of the occurrence.''

■ ■ It is a matter of common knowledge that cracks in the pavement of the nature described by plaintiff's witness, Miss Fugate, do not appear over night in the middle of July in this part of the country. The accident happened about 9:45 p. m. and the following afternoon the cracks were in the street at the point where plaintiff alighted from the bus. It is idle to urge that the condition of the street was not the same the night before or that it had not been the same for a considerable period of time. Such a condition is one of gradual deterioration and could only have developed over a long period of time. We think that defendant's suggestion that it had neither actual nor constructive knowledge of this condition is without force. It operated its buses up and down Drexel boulevard many times daily, during daylight hours, for months or years prior to this accident, and it is a reasonable inference that it knew or should have known of this condition. It was not necessary that the particular driver, who operated the bus in question, must have had knowledge of the dangerous condition of the street. It was sufficient to charge the defendant with knowledge, if said condition was of such a character and existed for such a length of time that any one of its drivers who travelled the route in question several times every day, could have known of it by the exercise of ordinary care. (*Cincinnati St. Ry. Co. v. Mueller,* 51 Ohio App. 314, 200 N. E. 770.)

Defendant also contends that ''a carrier of passengers is not in law required to protect such passengers in alighting from the ordinary unevenness of the surface of the streets at the place where the bus is stopped.''

It is sufficient answer to this contention to state that the evidence showed not mere or ordinary surface unevenness of the street where the bus stopped but many

cracks in the street of sufficient width and depth as to constitute a dangerous condition.

■ Defendant finally contends that, if a passenger in alighting has as good an opportunity to see and observe the condition of the street as the carrier's servants and knows that it would be dangerous for him to attempt to alight under such conditions, then he must be held to be guilty of contributory negligence if injured.

This is a correct statement of law (*Thomason v. Chicago Motor Coach Co.*, 298 Ill. App. 626) but it has no application here. As has already been shown, this accident occurred at night and the bus was stopped for plaintiff to alight at a place that was so dark that she could not see the defective condition of the street. This condition was not obviously dangerous and plaintiff had no knowledge of it.

In support of its several contentions defendant cites *Feeney v. Chicago City R. Co.*, 220 Ill. App. 400, *Thomason v. Chicago Motor Coach Co.*, 298 Ill. App. 626; and *Winters v. Aurora, E. & C. R. Co.*, 198 Ill. App. 52. Since the facts in those cases are so essentially different from the facts here it would serve no useful purpose to discuss them.

■ We are impelled to hold that the questions as to whether or not plaintiff was guilty of contributory negligence and as to whether or not defendant was guilty of negligence were properly submitted to the jury and that the jury's verdict was amply justified by proven facts and reasonable and permissible inferences.

For the reasons stated herein the judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*

FRIEND, P. J., and SCANLAN, J., concur.