(No. 83-CC-0610– )

EDWARD J. KIRBY, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed May 24, 1990.*

PATRICK MAHONEY & ASSOCIATES, P.C. (DONALD CROWE, of counsel), for Claimant.

NEIL F. HARTIGAN, Attorney General (ROBERT J. SKLAMBERG, Assistant Attorney General, of counsel), for Respondent.

DILLARD, J.

This cause comes on to be heard following the Commissioner's report.

Claimant, Edward J. Kirby, filed his complaint for personal injury against Respondent pursuant to section 8(d) of the Court of Claims Act (Ill. Rev. Stat. 1987, ch. 37, par. 439.8(d)).

## Background

On May 30, 1982, Claimant was riding his motorcycle with two companions southbound on Route 50 near Hobbie Avenue in Kankakee County, Illinois. Claimant testified that he was an experienced motorcyclist, but had never driven on the particular portion of the roadway in question prior to the date of the accident which gave rise to this cause of action. Claimant was proceeding southbound in the far left lane of Route 50 between 6:00 and 6:30 p.m. He observed a sign warning of an S-curve as he approached Hobbie Avenue. While negotiating the curve, Claimant stated he hit a series of ripples in the road surface and potholes. He testified he had not seen the potholes in the pavement prior to driving through them. Claimant further stated that the front wheel of his motorcycle began wobbling and that he hit a deep hole which caused him to lose control of the motorcycle, proceeding across the double yellow center line and into the path of oncoming traffic where he struck a car.

Claimant was transported to St. Mary's Hospital in Kankakee by ambulance where he was treated for bruises and lacerations to his face and arms and severe trauma to his left foot and leg. On June 7, 1982, Claimant's left foot and lower leg below the knee were amputated. Claimant was hospitalized for a period of two weeks. The Social Security Administration declared Claimant disabled for 15 months as a result of his injuries. Claimant received a prosthetic device approximately 18 months after the amputation. Claimant testified he had attempted to obtain employment but has not worked since the accident in 1982. He received his GED in 1987. In Claimant's Exhibit 1, admitted into evidence by stipulation of the parties, Claimant's

physician, Dr. Morris Lang, on April 15, 1983, stated that Claimant could eventually pursue a sedentary job with limited walking and standing requirements. Claimant testified that he can now walk about a mile while wearing his prosthesis without difficulty.

Claimant's total stipulated medical expenses are $5,574.15. All hospital expenses were paid by general assistance. Claimant seeks an award of $100,000 to include medical expenses, pain and suffering and inability to resume his former occupation as a truck driver and furniture mover.

## Law

Claimant alleges Respondent negligently maintained the roadway despite actual and/or constructive notice of the existence of defects in the road surface and/or failed to erect warning signs or signals indicating the condition of the surface, which negligent acts and omissions proximately caused Claimant's injuries.

It is well established that while the State owes a duty of ordinary care in the maintenance of its highways, the State is not an insurer of persons traveling thereon. (*Hollis v. State* (1981), 35 Ill. Ct. Cl. 86, 88.) The State need only maintain its roads in a reasonably safe condition. "The burden is on Claimant to show that the State had actual or constructive notice of defects that cause injuries. The mere fact that a defective condition existed, if in fact it did exist, is not in and of itself sufficient to constitute an act of negligence on the part of the Respondent." *Cotner v. State* (1988), 40 Ill. Ct. Cl. 70, 72.

## The Record

Respondent asserts that Claimant failed to demonstrate by a preponderance of the evidence that Re-

spondent negligently maintained the highway in question. The record reflects that a "State Improvement Report, Illinois Route 50, Section 140 W & RS Kankakee County" was prepared by Illinois Department of Transportation engineer Roger Wright in December 1980. The report included accident statistics for the intersection of Hobbie Avenue and Route 50 for the years 1974 to 1978. During that period, 93 accidents were reported with 36 injuries. Engineer Wright testified that he had made a speech at an information hearing on September 23, 1980, held to acquaint the public with an improvement project for the intersection of Hobbie Avenue and Route 50 in which he had stated that the intersection was "dangerous at best." The record also includes three articles from local newspapers regarding said hearing and referencing the dangerous intersection. Moreover, the improvement plan, which was subsequently funded and implemented, widened and straightened Route 50, signalized the intersection, and resurfaced the pavement to improve drainage.

Both the State engineer and field maintenance engineer Mulholland testified that their inspections did not disclose the existence of potholes or other surface problems serious enough to warrant immediate repair or warning signs. The maintenance engineer testified that although he traveled the road in question every day, he had seen no potholes. Mulholland alluded to a rippling effect in the pavement but stated he did not recall receiving any complaints regarding the condition of the roadway. He further had no recollection of receiving a copy of the accident report in this case which specifically included a notation by the investigating police officer that the road surface was in poor condition and dangerous for two-wheeled vehicles. Mulholland also stated his field officer did not keep copies of complaints.

He had no recollection of ever patching the area in question.

Claimant presented photographer Don Walpole who took photographs and movie film of the accident vicinity on June 24, 1982, less than one month after the occurrence. The photographs and movie were admitted into evidence without objection by Respondent. Both Mr. Walpole's photos and movie and a photograph introduced by Respondent show evidence of cracks, ripples and potholes of varying size in the road surface.

Claimant also presented Dr. Ronald Ruhl, an engineering professor and accident reconstruction expert. Dr. Ruhl testified that upon the basis of his review of the photographs of the roadway, Claimant's motorcycle, the police report and the deposition testimony of Officer Sheehan, that Claimant's front wheel had "channelized" in a pothole causing Claimant to lose control of his motorcycle. Dr. Ruhl stated that the front wheel of the motorcycle had two distinct dents which were, in his opinion, caused by the impact with the pothole in the case of the smaller dent and the impact with the automobile in the case of the larger dent.

Officer Lynn Sheehan, a veteran officer with the City of Kankakee, was subpoenaed to testify by Claimant. Officer Sheehan testified of his personal knowledge of the poor condition of Route 50 and stated he is a motorcyclist. He was the investigating officer sent to the scene immediately after the accident. Officer Sheehan made a notation on his report stating: "This area of the road is in bad condition and is particularly bad for two-wheeled vehicles." Officer Sheehan's report was admitted into evidence. He stated that he felt a large pothole located in the seam of the two southbound lanes of the roadway caused the accident.

Officer Sheehan stated that he did not interview the Claimant at the scene as Claimant was in the care of paramedics and appeared unconscious. No occurrence witnesses appeared at the hearing. The officer's report indicates that the other driver and witnesses stated Claimant was not exceeding the posted speed limit of 30 m.p.h. No evidence was presented to disprove that Claimant was traveling the roadway legally.

## Conclusion

Claimant's exhibits, coupled with the testimony of his witnesses, were persuasive in proving that the State had notice of the deteriorated condition of Route 50. The State's engineers' testimony demonstrated awareness of the "washboard" effect of the pavement caused by drainage problems and heavy traffic. The State had been aware of these problems for almost two years prior to the accident. These facts indicate that the State was negligent in its failure to either perform necessary repairs or erect proper signs warning the public of the rough road. The testimony of Claimant, Officer Sheehan and Dr. Ruhl is persuasive in ascertaining that the negligence of Respondent was the proximate cause of Claimant's injuries.

There is no evidence of contributory negligence on the part of Claimant. Respondent argues that Claimant's admission of drinking two "highballs" several hours prior to the accident should be considered contributory negligence. No evidence of impairment or intoxication was offered to substantiate this allegation.

Claimant's total stipulated medical bills are $5,574.15. As he was not employed at the time of the accident, lost wages, *per se*, were not included in Claimant's petition

for damages. Claimant has been unable to find employment since the accident and has experienced significant pain and suffering with the loss of his left leg.

Therefore, it is ordered, adjudged and decreed that Claimant is awarded $100,000 in full and complete satisfaction of this claim.