(No. 87-CC-3501–)

LOUISE ANN SCHMIDT, as Executor of the Estate of PETER S. SCHMIDT, Deceased and LOUISE SCHMIDT, CHRISTOPHER SCHMIDT, and ANDREA SCHMIDT, Claimants, *v.*
THE STATE OF ILLINOIS, Respondent.

*Opinion filed March 27, 1998.*

*Order filed June 29, 1998.*

PIGNATELLI & PIGNATELLI (PATRICK J. LISTON, of counsel), for Claimants.

JAMES E. RYAN, Attorney General (LAIN D. JOHN-STON & LIMO T. CHERIAN, Assistant Attorneys General, of counsel), for Respondent.

## OPINION

JANN, J.

This cause is brought by Louise A. Schmidt, as executor of the estate of Peter S. Schmidt, decedent, and arises out of a motorcycle accident which occurred July 20, 1986, on Illinois Route 10 between Easton and Mason City, in Mason County, Illinois.

Claimant's complaint at count I seeks recovery under a negligence theory. Count I alleges that Respondent: negligently failed to remedy a dangerous condition on its roadway, i.e., a defective road surface; allowed said dangerous condition to exist for a long period of time; failed to keep the roadway in reasonably good repair and safe condition for public travel; and failed to warn the motoring

public of a known dangerous condition. Claimant alleges that decedent's fatal injuries were a direct and proximate result of Respondent's negligence. Claimant's letters of administration as executor of decedent's estate are attached to and made an exhibit to the complaint.

Count I seeks property damage in the amount of $4,107.25 for decedent's motorcycle; funeral expenses in the amount of $4,347.50; $350,000 for mental anguish; $350,000 for pain and suffering; and $1,280,000 for loss of support pursuant to the Illinois Survival Statute. Ill. Rev. Stat. (1985), ch. 1101—2, 755 ILCS 527—6.

Count II of the complaint is brought pursuant to the Wrongful Death Act (Ill. Rev. Stat (1985), ch. 70, *et seq.*, 740 ILCS 180/0.01 *et seq.*) on behalf of Louise A. Schmidt, Christopher Schmidt, son of decedent, and Andrea Schmidt, daughter of decedent. Count II realleges the acts of negligence asserted in count I and further states that the decedent's dependents as named above have been deprived of decedent's support, consortium and service as a result of his wrongful death. Count II seeks damages for loss of support in the amount of $1,280,000 and for loss of services and consortium in the amount of $1,500,000.

Mr. Larry Henry of Route 1, Mason City, Illinois testified as to the events immediately preceding and following the accident. Mr. Henry is Louise A. Schmidt's brother. Mr. Henry stated he had been riding motorcycles for approximately 16 years prior to the date of the accident. Mr. Henry recalled that July 20, 1986, was a warm, dry summer day and that he and Peter Schmidt had decided to go for a motorcycle ride. Mr. Schmidt had ridden his motorcycle to rural Mason City from his home in Lyndon, Illinois on Saturday, July 19, 1986. Mr. Schmidt and his family were frequent visitors to Mason City as both Mr. Henry and his mother lived nearby. Mr. Henry testified that he had had

ample opportunity to observe Peter Schmidt ride his motorcycle and that Schmidt was a careful, defensive driver.

On July 20, 1986, Mr. Henry and Peter Schmidt went for a motorcycle ride around 11:00 a.m. They rode in a staggered formation and Mr. Henry testified that the posted speed limit was 55 miles per hour and the riders were traveling at or below the speed limit. Mr. Henry was the lead driver with Mr. Schmidt trailing. Mr. Henry observed no "rough road" or other warning signs between Easton and Mason City.

Mr. Henry testified that he was checking on Peter Schmidt two to three times per minute. As they drove east from Easton toward Mason City, he did not notice Mr. Schmidt having any difficulties. He saw Mr. Schmidt traveling on the far right side of the lane whenever he checked, and testified that they both held the same line of travel as they proceeded toward their destination.

According to Mr. Henry, the bike Mr. Schmidt was riding was relatively new and Mr. Schmidt had mentioned no mechanical problems with the bike. There were no weather problems encountered during the trip. There were no animals in the area alongside the roadway at the time of the accident.

Mr. Henry noticed an oncoming car begin to "nose-dive" as the car and Mr. Henry met. According to Mr. Henry, in his opinion, this meant the car was braking. Mr. Henry then checked behind him and saw something shiny flying through the air. He saw the car rise up as if it were running over something.

Mr. Henry brought his motorcycle to a stop and turned around. As he went back toward the car, he observed Peter Schmidt lying on the south side of the roadway. The car was in the westbound lane. Peter Schmidt's motorcycle was in a field on the north side of the roadway.

Mr. Henry testified that he found skid marks on the road which he believed were caused by a motorcycle sliding sideways and gouge marks he presumed were made by metal scraping the road.

Mr. Henry also found a hole in the roadway. He identified this hole in Claimant's exhibits 1 and 2 by circling the hole depicted in the photographs introduced into evidence. The hole was on the southern-most part of the traveled roadway. Mr. Henry indicated the hole could have been in an almost straight line with the other gouge marks on the road by using Deputy Smith's diagram and indicating that the hole would have been where the motorcycle was first drawn on the diagram. Mr. Henry testified that there was a skid mark going into and out of the hole the width of a motorcycle tire which indicated the tire went over the inside edge of the hole in his opinion.

Plaintiff's exhibit number 13 which was admitted into evidence, was a photograph of the pothole with a measuring tape over it which when viewed closely, indicates the pothole had a length of approximately 24 inches and a width of approximately 14 to 16 inches.

The testimony of Robert Arnold was submitted via an evidence deposition as an expert witness. His current employment includes providing engineering services for a variety of clients. Mr. Arnold testified that in his opinion, the pothole depicted in Claimant's exhibits 2 and 3 could cause a motorcycle to lose control. He described the hole depicted in the photographs as significant in size and stated that a motorcycle rider could be surprised by coming upon such a hole.

The evidence deposition of Arlan Shoemaker was also admitted into evidence. Mr. Shoemaker was a lead worker for the Illinois Department of Transportation in July of 1986. His immediate supervisor was Vernon Reichle.

Mr. Shoemaker testified that when he inspected the roads in his jurisdiction that he would stop and get out of his car if he saw something that needed repair. He would not stop and get out of his car if he just saw a pothole. He would only stop his car and inspect the road if there was something more significant than a pothole. Mr. Shoemaker testified that Route 10 between Easton and Mason City was in a rougher condition than the other roads in his jurisdiction. He also stated that Route 10 probably required more attention than any other road in his jurisdiction. The asphalt on Route 10, for some reason, did not hold and most of the breakage occurred on the outer edge of the roadway.

Vernon Reichle also testified about the condition of the road. Mr. Reichle was a field technician and responsible for the maintenance of Illinois Route 10 where the accident occurred. His duties included inspecting the roads. Mr. Reichle testified that a pothole two to three inches deep and a couple of feet in diameter was something that he would probably want taken care of right away. He also testified that if he knew a stretch of road was in particularly bad shape, that area should be paid closer attention to than other areas on the road.

Mr. Reichle was aware in July of 1986 that Route 10 in the area of the accident was a particularly rough or bad piece of road. His subordinates and superiors were also aware of that fact. The problem with the road breaking up in the area of the accident had been going on for many years prior to the accident.

Mr. Reichle testified that his duties included making recommendations for the placement of warning signs. During questioning by the Attorney General, Mr. Reichle was asked if the roadway in the area of the accident was in such a condition that he should have recommended a

warning sign. Mr. Reichle's answer was "Yes, I should have."

It was stipulated that Peter Schmidt was 37 years old at the time of his death. It was further stipulated that he was earning $25,307.05 at the time of his death, and would have continued to earn at least that amount until retirement at age 65, a period of 38 years. The loss of income over that period would be $708,597.

Louise Schmidt, wife of the deceased, testified that they were married almost 18 years when Peter was killed. Louise also testified about the loving, involved relationship Peter had with his children.

Louise described the close and loving relationship she had with Peter as her husband, lover, and friend. Louise described the effect that Peter's death had on the children emotionally and financially.

Christopher Schmidt, Peter's son, was 14 years old when his father was killed. He described his relationship with his father as "awesome." He described the many activities he enjoyed with his father and the many ways his father influenced his life. Kristopher testified that not a day or minute goes by that he doesn't wish his father was here.

Andrea, Peter's daughter, was nine years old when her father died. She also testified about the close relationship she had with her father and the impact of his loss on her life.

The State has a duty to all users of its highways to maintain them in a reasonably safe condition. (*Pigott v. State* (1968), 26 Ill. Ct. Cl. 262.) That duty includes adequately warning motorists of hazardous conditions of which the State has notice. *Hout v. State* (1966), 25 Ill. Ct. Cl. 301; *Gatlin v. State* (1985), 39 Ill. Ct. Cl. 51.

The Claimant in this case has alleged that the State was negligent in that the State allowed a dangerous condition, a defective road surface, to exist in a roadway for a long period of time; allowed a pothole to exist in the roadway for a long period of time; failed to keep the road in reasonably good repair for ordinary travel; allowed a hazard, a pothole, to exist in the roadway; and failed to warn traveling motorists about the dangerous condition.

To recover in a claim of negligent highway maintenance, the Claimant must prove that the State had actual or constructive notice of the defect in question. *Kirby v. State* (1990), 42 Ill. Ct. Cl. 77.

The main issues in this case are whether a dangerous condition existed on the State's highway, whether this condition was the proximate cause of Peter Schmidt's death and whether the State had actual or constructive notice of the defect.

The dangerous condition complained of in this case was the rough road and, in particular, a pothole in Illinois Route 10 in the eastbound lane of traffic approximately seven tenths of a mile east of Road 2950E. There is no dispute about this stretch of road being under the jurisdiction and maintenance responsibility of the Illinois Department of Transportation as the Department has admitted these facts.

Arlan Shoemaker, lead worker at the time of the accident was aware that the road was in bad shape and had been aware of that for a long time before the accident. He testified that the road in question was in a rougher condition than other roads in his jurisdiction and probably required more attention than other roads in his jurisdiction. He knew there were only a couple inches of asphalt on the road and it just did not hold for some reason.

He also knew the road had been breaking up on the outer edges of the roadway. He knew the breakage had been going on for some time prior to the accident. In fact, he knew the road had been deteriorating from 1975 until the time of the accident in 1986.

Mr. Shoemaker's immediate supervisor, Vernon Reichle, was also aware of the rough condition of the road before the accident according to Mr. Shoemaker. Mr. Reichle testified at trial that as of July, 1986, he was aware that Route 10 between Easton and Mason City was a particularly rough or bad piece of road. Mr. Reichle's superiors and subordinates were also aware that the stretch of road was particularly rough or bad. Mr. Reichle acknowledged that problems with the stretch of road breaking up had been going on for many years prior to the accident in question. No evidence of actual notice of the pothole complained of appears of record. No evidence was introduced regarding complaints or other accidents at this site within a relevant time frame.

Negligence can be proven by either direct or circumstantial evidence. (*Murphy v. Messerschmidt* (1977), 11 Ill. Dec. 5553, 368 N.E.2d 1299.) Circumstantial evidence is sufficient to support a cause of action for negligence and to sustain a verdict provided the inferences drawn from that evidence are reasonable. *McCommons v. Moorman Mfg.* (1980), 81 Ill. App. 3d 708, 301 N.E.2d 1354.

The State made a motion for a directed verdict at hearing. The State's motion for a directed verdict is based on the allegation that the Claimant has not established the existence of the alleged dangerous condition on Highway 10. While the Claimant has not produced any witnesses to specifically state that they saw the deceased hit the pothole there has been circumstantial evidence produced by

the Claimant that shows that the State had actual or constructive notice of the rough condition complained of, and therefore, the motion for a directed verdict is denied. The State's motion in limine to prevent the Claimant's introduction of a departmental report depicting the condition of the highway is granted. The examination of witnesses at trial was not conclusive as to the funding of the proposed improvement project to reconstruct the roadway. The witnesses did not have direct involvement in seeking funding nor explicit knowledge thereof. This funding is essentially moot, as we have found that the evidence supports a finding of Respondent's knowledge of the rough condition of the roadway and failure to erect warning signs per admissions of Respondent's agents.

The Claimant urges a finding that the roadway in general was negligently maintained and constituted a dangerous condition. The evidence does not support such a finding. The photographic evidence indicates patching of the roadway, and testimony was introduced that weekly inspections of the roadway were performed by IDOT. It was also noted that pothole patching was done on July 15, 1986, five days prior to the accident. The State is not an insurer of its highways. (*Walter v. State* (1989), 42 Ill. Ct. Cl. 1, 4 (citing *McAbee v. State* (1963), 24 Ill. Ct. Cl. 374; *Trotter v. State* (1993), 45 Ill. Ct. Cl. 164, 168.)) To be in a dangerously defective condition, a highway must be in a condition unfit for the purpose for which it was intended. (*Trotter* at 169, citing *Baker v. State*, 42 Ill. Ct. Cl. 110; *Allen v. State* (1984), 36 Ill. Ct. Cl. 24.) We have previously held that liability based upon negligent maintenance of a highway can be imposed only if the State had actual or constructive notice of a defect. *Stills v. State* (1989), 41 Ill. Ct. Cl. 60.

Herein, there is no evidence that the roadway was unfit for vehicular travel due to negligent maintenance by

the State. The Court has previously considered accident statistics and citizen complaints in establishing the existence of a defective roadway and in determining the State's actual or constructive notice of such condition. (See *Roach v. State* (1986), 38 Ill. Ct. Cl. 171; *Stills, supra* at 62-63; *Kirby v. State* (1990), 42 Ill. Ct. Cl. 77.) The evidence indicates that no accidents occurred at this location prior to decedent's tragic incident and no complaints were received by IDOT. The photographic evidence also shows that the extreme outer edges of the roadway in both lanes were rougher than the condition of the lanes nearer the centerline.

Claimant argues that the size of the pothole complained of (approximately 24 inches long by 14 to 16 inches wide and 2 to 3 inches deep) is evidence of negligent inspection by Respondent and the existence of the pothole for a time period which would impute constructive notice to Respondent and a commensurate duty to repair the hole or warn of its existence. The facts herein are disputed as to the effect such a pothole would have on a motorcycle operating at the posted speed limit and are distinguishable from Claimant's citations. Most notably, the expert testimony offered by Claimant is neither conclusive nor compelling and we lack occurrence witnesses. We are unwilling to make a finding of notice of the specific pothole complained of based upon the facts herein. As previously noted, Respondent has admitted knowledge of a rough surface and that signage was probably appropriate.

In order to recover, Claimant must prove by a preponderance of the evidence that the defect complained of was a proximate cause of the injury complained of. (*Cotner v. State* (1987), 40 Ill. Ct. Cl. 71.) Claimant has not met the burden of proof to establish proximate cause. As

previously stated, Claimant's expert witness testified that the pothole in question could cause such an accident. The testimony of Mr. Henry, although quite clear, is not conclusive. He speculated as to his observations and assumed the decedent's vehicle made the skid marks and gouges he observed after the accident. Mr. Henry did not see the accident and his relationship with the decedent must be considered in weighing his testimony. The testimony of Deputy Smith is somewhat contradictory as noted by Claimant. However, his testimony taken as a whole indicates that Deputy Smith did not believe the pothole identified by Mr. Henry constituted a defect which would cause such an accident. Testimony by Deputy Smith is also in conflict with Mr. Henry as to the position of skid marks at the scene.

The only eyewitness to the accident did not testify at hearing. Respondent sought to introduce the witness's discovery deposition over Claimant's objections. In the absence of authority for the introduction of the deposition testimony, said testimony shall be excluded from our deliberations.

Claimant's decedent had traveled the same roadway the day before the accident and ergo, was aware of the general condition of the roadway. We have no direct evidence of what he saw or did immediately preceding the accident. Although the State may have been negligent in failing to erect warning signs as to the rough road surface, we cannot conclude that said negligence was the proximate cause of the accident.

Based upon the discussion above, we must regretfully deny the Claimants' claims arising out of this tragic incident.

This cause is hereby dismissed.

ORDER

JANN, J.

This cause comes on to be heard on Claimants' petition for rehearing and prior motion for extension of time to file their petition. The motion for extension of time is hereby granted instanter.

We have carefully considered Claimants' petition and the record herein. Claimants have raised no issues which were not previously considered by the Court but argue that the Court erred in its assessment of the testimony and evidence herein as to notice of a dangerous road condition and proximate cause of decedent's injuries.

We find Claimants have not proven either notice of the defect complained of or proximate cause by a preponderance of the evidence. The cases cited by Claimants to support a finding of liability based upon circumstantial evidence are distinguishable, though routinely cited by Claimants under similar fact scenarios. We note that *Elkins v. State*, 85 CC 3001 (unpublished opinion, July 30, 1979) which cited *O'Shea v. Chicago Motor Coach Company* (1946), 328 Ill. App. 457, 66 N.E.2d 482, involved a defect which had existed for some nine months. The award in *O'Shea* involved an injury to a bus passenger at a specific bus stop used many times daily by the bus company and the evidence indicated the defective pavement had been in such condition for a substantial period of time.

Sadly, the evidence herein when taken in a light most favorable to Claimants (*i.e.*, disregard the disputed testimony of Deputy Smith and assume, *arguendo*, notice of the alleged defect by Respondent) still fails to reach a preponderance which would impute liability to Respondent.

As previously noted in our opinion of March 27, 1998, we have no direct, objective evidence of record as

to the actual circumstance which caused decedent to lose control of his motorcycle. The citations relied upon by Claimants which make findings of liability in circumstantial cases rely upon the Claimant's testimony or that of objective occurrence witnesses subject to cross-examination. We wish to note that Mr. Henry's testimony is in no way impugned and that he was a most helpful witness in these proceedings. However, Mr. Henry did not see decedent lose control of his motorcycle and has no direct knowledge that decedent struck the pothole complained of and that the pothole caused decedent's demise.

Mr. Henry's observations and conclusions of causation though credible, are not fact but speculation and the circumstances are not of a nature which support a finding of inferred causation as no other logical premise for causation exists. Claimants seem to ultimately argue *res ipsa loquitor* to reach a finding of liability. As discussed in *Rutledge v. State* (1997), 44 Ill. Ct. Cl. 257, a Claimant alleging *res ipsa loquitur* must prove that his injury is of a nature which does not occur in the absence of negligent acts, was caused by an entity or instrumentality within the exclusive control of the defendant, and was not due to negligence by Claimant. Claimants' witnesses did not adduce evidence that would support a finding of liability absent speculation and conjecture by this Court.

Wherefore, we must affirm our prior opinion denying these claims and Claimants' petition for rehearing reconsideration is hereby denied.